The opinion of the Court was delivered by
Tiughman, C. J.
This case depends upon' a single question, whether land on. which no settlement had .been made, could be taken up by virtue of one of the warrants known by the name of David Meade’s warrants, issued the 5th April, 1802. The. Court of Common Pleas decided in the affirma- ■ tive, and their opinion was excepted to by the plaintiffs in error, who were also plaintiffs below.
David Meade’s warrants were of a peculiar nature. He had taken up -land near Wyoming under .Pennsylvania, the possession of which was taken from him by certain persons claim-" ing title under the State of Connecticut. The memorable contest between Pennsylvania apd Connecticut, is so well known, that it may now be considered as matter of history. In order to quiet those disturbances, which had agitated both-States, and more than .once b^en attended with bloodshed, an' Act of Assembly (called the confirming-act) was passed on the 28th March, 1787, by which the titles of certain Connecticut settlers was confirmed, and provision was made, for compensating the Pennsylvanians, who thus lost their lands, by a.grant of other lands wherever they. could be found vacant, within the State. But the agitations of party, having not yet sub-' sided, the confirming law was suspended by another Act (called the suspending Act) passed, the 29 March, 1788, and finally repealed, by an Act passed the 1st April, 1790. The *104 Pennsylvania claimants were thus left in a distressed situation. The possession of their lands was' withheld, and yet they could obtain no compensation. It is true, the Courts of justice were open to them, and after the decision by the Circuit Coiirt of the United States, (in the case of Vanhorne’s Lessee v. Dorrance,) that, the confirming Act was a violation of the Constitution of Pennsylvania,_and therefore null and void, théy might, have recovered'the possession of -their lands. Nevertheless, David Meade, and some others, who had been put to considerable expense, and trouble, in complying with the conditions of the confirming law, while it remained urisuspended, seemed to have , strong claims on the justice of the Commonwealth. Indeed its honour was deeply concerned, in indemnifying persons who had acted on the faith of an Act of Assembly, and of this the Legislature was sensible. For, by an Act passed the 9th of March, 1796, after a recital she,wing the,merits of David Meade’s Case, it was enacted, that he should be entitled to a credit, to be entered on the books of the receiver general, “ which might be transferred to any person, and passed as credit, either in taking out new warrants in any part of the State, where vacant lands may be found, or paying arrearages on former grants.” These expressions are clear, and explicit,- that vacant land might be taken up, wherever it could be found in the State. Why is it then, that those warrants should not be applicable to lands • which were unsettled? Because, say the plaintiffs in error, the •land officers were forbidden to issue warrants for any lands-, except such lands as were settled, by the Acts of 22d April, 1794, and 22d September, 1794. But to this, there are several satisfactory answers. In the first place, the Act of March, 1796, being subsequent to the Act of 1794, operated as a repeal of them,.so far as concerned David Meade,'and in the next place, Meade’s Case, was so different from persons in ge~ neral, who wished to take up vacant land, that it deserved a preference. Neither could the intent of the Act of March, 1796, be carried into effect without giving him a preference. The intent was to permit him to take up land himself, if he pleased ; for the value of his credit on the books of the receiver general would be much diminished, if, instead of taking up land for his own use, he was obliged to sell an<J transfer his right to others who had made settlements. Moreover, *105 the, construction Contended for, is against the zvords of the Act of Assembly—the construction denies the right of taking up vacant lands and confines the -warrants to lands which' were settled (and not vacant;) whereas the Act. of Assembly speaks; expressly of vacant lands'. The construction given to this Act, by the Board of Property, soon after its passage, was, that warrants might be issued to affect unsettled lands,. as was conceded by the Attorney General in the case of the Commonwealth v. Cochran, 2 Binn, 271. And the same construction has been giv.en by the.Legislature itself, ás plainly' appears by an Act passed the 1st April, 1805, by which it is provided; that ’Meade, and others in a similar situation, may receive payment from the Treasury, in money, or apply,their credits to the payment of warrants to be taken out for lands; but, in case they elect' to take up lands, they shall be liable to the condition of taking up ¿.one but settled lands. But this condition would'have been unnecessary, if, by- the Act of March, 1796, they were confined to lands .which had been settled. And last of all, I think the construction of this Act has been-settled, by the decision of this Court in the case of the Commonwealth v. Cochran, 2 Binn. 270. That case indeed, arose, not on this Act of Assembly, but on another, expressed in nearly the same words ; and if there be any. difference between them, it is in favour of Meade’s warrants. Peter Wikoff, and others, had taken up, and paid for,.lands supposed to be in Pennsylvania, but which turned out to be in New Fork, upon the fixing of the boundary between the two States. In order to compensate these persons-, for the lands they had lost, they were permitted to have a credit on the books of the receiver general, which might be transferred to any person, and passed ás a credit, either in taking put new warrants in any pari of the State where land may be found, or in payment of arrears of former grants. This Act was passed the 19th of February, 1801, and the Court decided, that warrants issued under it, were applicable to’ unsettled land. The words of the two Acts are precisely the same, except that in the latter, the expressions are, any part of the State where land may be found—and In the former, where vacant land may be found. The only difference is, the omission pf the word vacant, in the last Act; which, if it have any sensi- . ble effect, is in favour of Meade’s-warrants. Then as to the *106 merits of the persons, the comparison is altogether in favour of Meade. For Wikoff had gone beyond the boundaries of the State, and was himself’concerned in the mistake, under which lands in New Tork were surveyed. Whereas Meade had made no mistake, but purchased lands within the State; ^ich he was deprived by a high-handed Act of prerogative, necessary ip be sure, but which'ought never to be exercised, but in cases of necessity, nor then, without liberal compensation. Upon the whole, when all the circumstances of Meade's case, and all the Acts of Assembly which bear upon it, are brought into'viewj the law is extremely plain, nor should I have thought-it necessary to enter into so minute an explanation, had it not been said, -that many titles depend on-it.
I am of opinion that the judgment should be affirmed.
Judgment affirmed;