(This case was argued at Harrisburg in 1850.)

## Hoffman et al. *versus* Danner et al.

The quantity of land which passes by a sheriff's sale to the purchaser, is to be ascertained by the extent of the levy.

The right of construing the written return of the sheriff generally belongs to the court, and the quantum of estate conveyed by a sheriff's deed is usually referable to the court alone; but where, from the generality of the terms used, or from uncertainty of description, a doubt is raised as to the boundaries of the levy or the position or limits of the land sold, evidence *aliunde* may be resorted to; and, where such evidence is received, it is error for the court to direct peremptorily how the verdict is to be rendered.

ERROR to the Common Pleas of *York county*.

This was an ejectment by J. B. Hoffman and Barbe and wife *v.* Martin Danner and others, brought in October, 1846, for a piece of ground in that part of the Borough of York known as "Hays Addition," as lot No. 14, on the northerly side of Main street, beginning at the borough line, and extending in front westerly along said Main street 256 feet, and in length or depth northerly 226 feet to a twenty feet wide alley, bounded on the easterly side by land of Martin Danner, on the west by a lot in the possession of Elizabeth Wissenall, and on the south by said Main street, being a triangular lot of ground, containing two roods and twenty·five perches.

Tried before the Hon. ELLIS LEWIS, on the 12th and 13th days of November, 1849.

Both parties claim under Barnhart Hoffman, deceased.   The plaintiffs, Louisa and John, as his children and heirs at law; and

[Hoffman et al. *v.* Danner et al.]

the defendants under a sheriff's sale made in the year 1825, in pursuance of a judgment obtained in the Common Pleas of Dauphin county, in which Tschudy Minore was plaintiff, and Jacob Heilig, administrator of Barnhart Hoffman, deceased, defendant. A test *fi. fa.* was issued to York county, on which a levy was made in the following words:—"By virtue of the within writ of *fi. fa.* to me directed, I have seized and taken in execution, as the estate of Barnhart Hoffman, deceased, a certain lot of ground marked in the plan of "Hays Addition" to the Borough of York, No. 14, bounded east by Jonathan Jacobs' lot, north by an alley which separates it from Martin Danner's lot, west by lot No. 13, and south by the York and Susquehanna turnpike, containing in front on said turnpike 3 perches and 9 tenths." June the 7th, 1825. So answers Michael Doudel, sheriff.

On the trial of the cause the plaintiffs narrowed their claim so as to exclude so much of lot No. 14 as fronted on Main street 3 perches and 9 tenths, on which the building stood at the time of the levy, bounded by lot No. 13 on the west, that being the part of lot No. 14 which they conceived to be embraced in the levy, and passed by the sheriff's sale hereinafter mentioned.

From the record produced, it appeared that a *venditioni exponas* issued to York county, but that it was never returned. The sheriff's advertisement, as published in the York Gazette, described the premises as in the levy. The defendants gave in evidence, a sheriff's deed, dated December 10, 1825, conveying, in consideration of $51, a certain lot of ground marked on the plan of Hays Addition, of the Borough of York, No. 14, bounded west by Jonathan Jacobs' lot, No. 13, on the north-east by an alley which separates it from Martin Danner's lot, on the south by the York and Susquehanna turnpike-road, containing in front on said turnpike 3 perches and 9 tenths. The plaintiffs objected to the admission of this evidence, because the deed did not correspond with the levy. The court admitted the evidence. By virtue of this levy, sale, and sheriff's deed and sundry deeds of conveyance from the purchaser at sheriff's sale, and those claiming under him to the defendants, they claim to hold the lot of ground for which this suit was brought, being *the whole of lot No.* 14.

On part of defendants there was given in evidence a deed from Jonathan Jacobs and wife to Hoffman, in 1818, conveying the *whole lot*, No. 14; and parol evidence was given of the situation of the property, at the time of the levy and sale. Objection on part of plaintiffs.

The plaintiff then gave as rebutting evidence, a deed from Jonathan Jacobs and wife to John Jacobs, dated in 1814, going to show that he had conveyed the western part of lot No. 14 *before* his conveyance to Hoffman; and also a deed from John Jacobs and wife, conveying the same premises to Hoffman by deed dated in

[Hoffman et al. *v.* Danner et al.]

1816. *The description of the premises in this last deed is the same as in the levy.* The plaintiffs also gave parol proof of the situation of the premises at the time of the levy and sale.

At the close of the trial the defendants' counsel asked the court to charge the jury, that on the whole evidence in the cause the defendants were entitled to a verdict, and the court accordingly instructed the jury, *that upon the whole evidence in the cause, the defendants were entitled to a verdict.*

Verdict for defendants.

Errors assigned:

1. The court erred in construing the levy to include the *whole* of lot No. 14.

2. The court erred in not leaving it to the jury to ascertain, from the evidence, whether the whole, or only a part of lot No. 14 was included in the levy, thereby withdrawing all the facts from the jury.

3. The court erred in charging the jury that, *on the whole evidence in the cause,* the defendants were entitled to a verdict.

*Fisher* and *Potts,* were for plaintiffs in error.—Had the levy been on lot No. 14 without any designation of boundaries to restrict it, the whole of lot No. 14 would have passed; but when the terms are restrictive and give a qualification, then they shall have effect in restraining the operation of the grant within the extent of the terms of restriction, if there be any parcels to answer the restrictive terms; if not, they are to be rejected as insensible. *Sheppard's Touchstone* 247; 5 *Barr* 263.

Also that the evidence was contradictory, and that it should have been referred to the jury. 5 *Bin.* 503; 7 *Serg. & Rawle* 147; 12 *do.* 135; 4 *do.* 279; 3 *Watts* 51.

*Campbell,* and *Evans,* and *Mayer,* were for defendants.—That it appeared clearly by the testimony of the sheriff who held the sale, that the whole of lot No. 14 had been sold.

As to the construction of the levy, that the recital of boundaries was unnecessary and insensible. 4 *Wend.* 313; 3 *Greenleaf* 471; 10 *Watts* 100; 2 *Barr* 172; 5 *Serg. & Rawle* 259; 1 *W. & S.* 539.

The opinion of the court was delivered by

BELL, J.—The quantity of land which passed by the sheriff's sale to Franklin, under the defendant's claim, is to be ascertained by the extent of the levy. The case was, therefore, properly treated on the trial, as turning on that inquiry. As, at the date of the execution, the whole of the lot numbered 14 belonged to Hoffman, his creditor might have directed a levy and sale of the whole. Yet

[Hoffman et al. *v.* Danner et al.]

he was certainly at liberty, with the assent of the debtor, to embrace a less quantity, and if he did so, or permitted the sheriff, by the use of a limited and restricted description, to indicate an intent to take in execution a smaller portion than is contained within the original triangle, the purchaser, who claims only through the proceedings of the officer, will not be permitted to stretch his ownership beyond the designated boundaries; even though the sheriff's conveyance, by an extended description, might seem to afford warrant for such a pretension. Streaper *v.* Fisher, 1 *Rawle* 155; Gruff *v.* Guilford, 4 *Watts* 223; McCormick *v.* Harvey, 9 *Watts* 482; Carpenter *v.* Cameron, 7 *Watts* 51. In obedience to this principle, the jury was properly instructed that "the defendant's title depends on the question whether the description in the sheriff's levy includes the land in controversy." But conceiving that the return of levy in connection with the plan of "Hay's Addition," to which it referred, sufficiently proved an actual levy of the entire triangular piece, the court peremptorily directed that, under the evidence, the defendants were entitled to a verdict.

The construction of written instruments is undoubtedly the exclusive province of the court, and the *quantum* of estate conveyed by a deed is referrible to the judges alone. But where that estate is situate, what are its limits and contents must frequently depend upon evidence *dehors* the writing; and, thus, it is often a pure question of fact, or of law and fact compounded, upon which a jury must be called to pass: Collins *v.* Rush, 7 *Serg. & Rawle* 102. This is peculiarly true of loose written returns of writs of execution, which ignorance and carelessness combine to divest of every feature approaching to certainty. With us, inaccuracy of description in these inceptions of title is so often indulged, that it has been found necessary to make a liberal use of assisting evidence documentary and oral in correcting mistakes, explaining ambiguities, and applying indeterminate delineations to disputed localities. Where a return is intelligible in itself, and ascertains with reasonable precision the particular tract taken in execution, no room is afforded for the introduction of explanatory proof, and none will be received in contradiction of the official act. But where, either from the generality of the terms used, uncertainty of delineation, or seeming contradiction of description, a doubt is raised affecting the boundaries of the levy, its particular locality or extent, recourse is, necessarily, had to evidence *aliunde.* In many, perhaps most, of these instances, the difficulty proceeds from wide generalities of language, which fail to indicate any precise locality; though it also frequently springs from inability to fix a described line of division or boundary, without invoking the local knowledge of those acquainted with the subject of dispute. Where this happens, while the right of construing the written return must be conceded to the court, the position and limits of the land and the quantity intended

[Hoffman et al. *v.* Danner et al.]

to be sold, becomes a legitimate object of investigation for a jury. A judge who evades to declare the meaning of a deed or other writing commits an error, but if the instrument cannot be understood without reference to extraneous facts, the jury must judge of the whole. Instances of the application of this elementary principle to a levy, where the description of lands intended to be embraced by it lacked internal certainty, are furnished by Scott *v.* Sheakly, 3 *Watts* 50; Swartz *v.* Moore, 260; and Hyskill *v.* Given, 7 *Serg. & Rawle* 372; among many others.

In the case before us, the court seems to have proceeded upon the idea that the return of levy upon "a lot of ground marked in the plan of Hay's Addition in the Borough of York, No. 14," considered in connection with the plan itself, is so precisely descriptive of the triangular piece of ground then owned by Hoffman, that it is not to be controlled or restrained by the subsequent specifications of boundary. In this conclusion we have not been able entirely to concur. Had the levy been generally on lot No. 14, on the plan of Hay's Addition, doubtless the entire lot so numbered would have passed. But it is a cardinal rule of interpretation that effect is to be given to all the words of a written instrument; and another is, that when the terms used are restrictive and give a qualification, then they shall have effect in restraining the operation of the grant within the extent of the terms of restriction, if there be any parcels to answer the restrictive terms: *Sheppard's Touchstone* 247. It is true, the same author adds, "but if there be not any parcels to satisfy the terms of restriction, they shall be rejected as insensible;" or, as it is expressed in another place, "if there are certain particulars once sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not frustrate the grant;" 7 *John. Rep.* 228; 4 *Wend.* 318–19; nor, it may be added, circumscribe it. Were it, then, manifest that the call for Jonathan Jacob's lot on the *east*, is insensible, or was inserted by mistake, the return ought, questionless, to be read as though the call had no place in the description of the land. But the question whether this be so offers one of those ambiguities which may depend for its exposition upon extraneous proof; and when recourse is had to this, the solution of the question must be referred to the jury, under the direction of the court. The inquiry is, then, reduced to this, whether there is any thing in the cause showing the sheriff might have had reference to a fact, line, or boundary, which reduced the lot he intended to take in execution, to the width of three perches and nine-tenths on its southern front? If so, the jury should have been called to aid its determination.

Looking to the evidence on this point, given on both sides, it is impossible to say, as matter of law, that there is nothing upon which the case I have referred to, can operate, or that it is alto-

[Hoffman et al. *v.* Danner et al.]

gether so void of meaning as to be deemed insensible. It is almost too plain for dispute that the description of the ground, contained in the levy, was copied from the deed of 1816, made by John Jacobs to Hoffman, and which, at the time of the levy, was of record. It established a line of division between the portion conveyed to Hoffman, containing, on the turnpike, three perches and nine-tenths, and the part then owned by Jonathan Jacobs; and it accordingly calls for Jonathan Jacobs' lot on the *east*. This but followed the prior conveyance from Jonathan to John Jacobs, in 1814. Here, then, was a boundary established by conveyances appertaining to the property in question. True, it was afterwards obliterated as a line of division, by the deed of 1818, from Jonathan Jacobs to Hoffman, in which the former assumes, untruly, to be the proprietor of the whole lot. But this by no means proves the sheriff did not adopt it, as bounding the extent of ground taken in execution. That he did so is further evidenced by the designation of the alley as the northern boundary, and the assertion that the front of the lot seized was but three perches and nine-tenths. It is true, the latter fact would weigh nothing, were the actual bounds undisputed; but when the very question is *as to these*, in reference to a town lot, which in a great measure depends for its value upon the extent of its front, the designated measure is not wholly to be disregarded. The plaintiff's hypothesis is assisted, too, by the oral evidence, that speaks of the existence of a separating fence on the line established in 1814, which, though contradicted, could not be wholly excluded from consideration. If the sheriff did so restrict his levy, the sale must have been made in pursuance of it, and it is no answer to suggest that the officer must have labored under a mistake. Admit that he did so, his blunder cannot work an enlargement of the levy beyond the actual fact, though it would have been good ground for setting aside the levy and sale—a course which was open to the plaintiff in the execution, if dissatisfied with the act of the officer, and perhaps to the purchaser: Friedly *v.* Scheetz, 9 *S. & R.* 156. Most of the cases which have arisen on this branch of the law, find their origin in similar mistakes, of which Carpenter *v.* Cameron, and McCormick *v.* Harvey, may be noticed as instances. The question is, what limits the officer had in his eye at the time of the levy, and what proportion of the land he actually levied on. If he took less than, in fact, belonged to the defendant in the execution, just so much passed, and no more. But this, in our case, is partly a question of fact, depending in some measure on oral proof. I repeat, it ought therefore to have been so put to the jury.

Judgment reversed, and a *venire de novo* awarded.