## Koch *versus* Dunkel.

1. Where land is described in a deed of conveyance by courses and distances and also by calls for adjoinders, the latter, where there is a discrepancy and there are no monuments on the land, must govern.

2. If there is any ambiguity in a deed as to the quantity of land conveyed thereby, arising from a conflict between the calls and the courses and distances, articles of agreement in pursuance of which the deed was executed may be admitted in evidence, to show the intent of the parties.

May 13th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY and STERRETT, JJ. PAXSON and WOODWARD, JJ., absent.

[Koch *v.* Dunkel.]

Error to the Court of Common Pleas of *Cumberland county:* Of May Term 1879, No. 186.

Covenant by Louis H. Koch against J. Dunkel, upon a covenant of general warranty contained in a deed from defendant to plaintiff, to recover damages for a failure of title as to a certain quantity of the land thereby conveyed.

By agreement the cause was submitted to the court, Herman, P. J., without a jury, who found the following facts :

"Jacob Dunkel, the defendant, being the owner, in fee-simple, of a farm containing sixty-two acres and six perches of improved land, situate a short distance west of Carlisle, in North and South Middleton townships, sold and conveyed to John Cameron, on the 23d of November 1867, by deed of that date, duly executed and delivered, a small strip of land off from the northern side of this farm, containing three acres and thirty-eight perches. Cameron immediately, upon the date of his purchase and deed to him of this strip of land, went into possession of it, a line fence, cutting it off from the body of the farm, was at once put up by him and Dunkel, and the same year he (Cameron) built a house on it, and he and his tenants have been in the actual possession and occupancy of it ever since. Dunkel, after this sale and conveyance to Cameron, continued in the ownership and occupancy of the remaining fifty-eight acres and one hundred and twenty-eight perches of his farm, farming and having it farmed, until the 21st of May 1878, and on that day he articled with Koch, the plaintiff, for the sale of this land to him, for the gross price of $9000. The article of agreement entered into between them on that day describes the land sold as, "a farm containing sixty acres more or less, situate in North Middleton township, Cumberland county, and now in the occupancy of said Dunkel, bounded on north by S. Williams, on east by W. J. Shearer, south by —— Brandon, and on west by George Bosler," and stipulates, that Koch shall "pay for the same, $9000, on the execution of the deed, the said Dunkel to deliver possession to said Koch between the tenth and twelfth days of June 1878, at which time the deed will be executed and delivered." The land thus sold to Koch, was the land that Dunkel was then in the occupancy of, the farm which actually contained fifty-eight acres and one hundred and twenty-eight perches, and was that part of sixty-two acres and six perches which remained to Dunkel after the sale and conveyance of the three acres and thirty-eight perches to Cameron. In pursuance of this sale to Koch, a deed was drawn up by Mr. Cornman, who acted, in doing so, as counsel for both Dunkel and Koch, and this deed was executed and delivered by Dunkel and wife to Koch on the 11th of June 1878, and at the same time, possession was given to Koch of these fifty-eight acres and one hundred twenty-eight perches of land, and thereupon Koch paid to Dunkel the sum of $9000, the full amount of the purchase-money, previ-

[Koch *v.* Dunkel.]

ously agreed upon, and Dunkel receipted therefor in the deed. Although Koch really purchased no more than the fifty-eight acres and one hundred and twenty-eight acres of land which Dunkel was in the occupancy of on the 21st of May 1878, and agreed to pay for no more, was put into the possession of no more and paid for no more, yet the courses and distances in the description of the land, set forth in the deed, takes in and embraces the three acres and thirty-eight perches of land which had previously been conveyed to Cameron, but the calls for the adjoiners call for Cameron as an adjoiner on the northern side at the place where the Cameron land lies. The description in the deed further describes the land conveyed as containing sixty-two acres and sixteen perches, strict measure. The deed contains a covenant of general warranty, and the usual words, " grant, bargain and sell."

This action was upon the covenants in the deed, to recover for the deficiency of three acres and thirty-eight perches.

The defendant offered in evidence the articles of agreement of May 21st 1878, which were objected to on the ground that the agreement was merged in the subsequent deed. The court overruled the objection. The court also decided that the plaintiff could not recover. Exceptions were filed to this decision, which the court dismissed, when plaintiff took this writ, and alleged that the court erred in admitting in evidence the articles of agreement, and in deciding in favor of defendant.

*W. Trickett, J. & T. Cornman* and *W. F. Sadler,* for plaintiff in error.—The call for an adjoinder, unless there are some monuments on the ground which make visible and plain the limits of the lands claimed by contiguous owners, is no more certain than a call for courses and distances: Falls Village Water Co. *v.* Tibbets, 31 Conn. 169; Belden *v.* Seymour; 8 Id. 32; Armstrong *v.* Boyd, 3 P. & W. 460; Blasdell *v.* Bissell, 6 Barr 259; Jones *v.* Holstein, 47 Barb. 312; Yates *v.* Van De Bogert, 56 N. Y. 531; Bond *v.* Fay, 8 Allen 213; Marsh *v.* Marshall, 19 N. Y. 307; Clark *v.* Wethey, 19 Wend. 320; Brolasky *v.* McCain, 11 P. F. Smith 163. Articles of agreement are merged in the deed. If the latter grants more or less land than the articles mention, or for a different price, or with different collateral covenants, the conclusive presumption of law is that the parties changed their purpose between the execution of the articles and that of the deed: Williams *v.* Morgan, 15 Ad. & E. 786; Gregory *v.* Griffin, 1 Barr 208; Jones *v.* Wood, 4 Harris 38; Creigh *v.* Beelin, 1 W. & S. 88; Miller *v.* Smith, 9 Casey 386; Moser *v.* Miller, 7 Wright 157.

*S. Hepburn, Jr., W. J. Shearer* and *S. Hepburn,* for defendant in error.—It was competent to show by the agreement that there was a mistake in the deed, and what the intention of the parties

[Koch v. Dunkel.]

was: Gregory v. Griffin, *supra*; Creigh v. Beelin, *supra*; Gump's Appeal, 15 P. F. Smith 479.

Mr. Justice GORDON delivered the opinion of the court, June 2d 1879.

This was an action brought by the plaintiff, Louis H. Koch, against the defendant, Jacob Dunkel, on a covenant of general warranty in a deed, for land, executed and delivered by the latter to the former, on the 11th of June 1878. This indenture purported to convey, by certain metes and bounds, sixty-two acres and seventeen perches of land for the consideration of a round sum of nine thousand dollars. This money was fully paid at, or immediately before, the delivery of the deed, and Koch was thereupon put into possession of the premises. It was afterwards discovered, if it were not known before, that there was a deficiency in the land thus sold of some three acres and thirty-eight perches; and it is for the value of this deficiency that the present suit is brought.

Disregarding, for the present, the technicalities of this case, the explanation of the transaction is about as follows: In November 1867, Dunkel conveyed to John Cameron a strip, off the northern side of his farm, of three acres and thirty-eight perches, the same as the deficiency above stated. Cameron immediately went into possession, fenced it off, erected buildings upon it, and has occupied it ever since. Furthermore, in May 1878, Dunkel and Koch entered into articles of agreement, in pursuance of which the deed above recited was made, and in said articles the land was described as a farm of sixty acres, more or less, for which Koch agreed, on delivery of the deed, to pay nine thousand dollars. From this it is quite evident that both the courses and distances and contents of the land, as stated in the deed, were a mistake, arising, no doubt, from the copying, by the scrivener, of the original deed to Dunkel, instead of his following, as he ought to have done, the terms of the agreement. The facts above stated render this conclusion inevitable, for as Cameron was in possession and had been in possession at the time when, and many years before, Koch bought, he surely did not suppose he was purchasing Cameron's land, and as the articles of agreement called for but sixty acres, *more* or *less*, the obvious intention of the parties was to sell and buy the farm then in Dunkel's possession—nothing more and nothing less. This conclusion is still further fortified by the fact that the price to be paid was a gross sum, and not a certain sum per acre. Clearly, then, on the equity of the transaction, the learned judge, to whom the case was submitted, decided rightly.

But the plaintiff contends that the previous agreement was merged in the deed, and so was not competent evidence. For the present this may be conceded. In that event, the case depends upon the deed alone, without regard to the intent of the parties,

except as expressed in that instrument. But the deed calls for certain adjoinders, among which is John Cameron, and it is not contended but that the plaintiff got all the land within these calls: but, on all authority, in the absence of original marks found upon the ground, these calls must govern, rather than the courses and distances. Adhering, then, strictly to the deed, and there is nothing upon which the plaintiff can rest but the mere discrepancy in quantity. But as to this, in Large *v.* Penn, 6 S. & R. 488, it was held, that where a deed described land by natural boundaries, and also by quantity, there was no implied covenant that the quantity of land conveyed should equal the quantity mentioned in the deed. There, as here, after mentioning the boundaries, the deed set forth the quantity, but it was said this was introduced, not by way of covenant, but description; and so we say here, for there is nothing in the deed before us which indicates that the quantity was introduced for any other purpose than that of description. This whole question is, however, definitely settled by the case of Kreiter *v.* Bomberger, 1 Norris 59, in which our brother, Mr. Justice SHARSWOOD, said, in speaking of a contract for land, like the present, fully executed, "We are of opinion that in this class the transaction cannot be ripped up without actual proof of fraud or mutual mistake." Yet, in this case, the actual contents of the lot sold were nearly one-fourth less than the quantity called for by the deed. What then remains? If it be said, the John Cameron lot was formerly part of the Dunkel tract, and that the call on the north may be as well answered by other land of Cameron, then we ask, how is this to be proved? Certainly not by the deed. The call is for land of John Cameron as found on the ground when that instrument was executed, and from it we learn nothing as to how his title was acquired. His south line was well marked; the call is for that line, for to say that when a call is *to* adjacent land, it means *into* that land, is a perversion of terms. There would seem, therefore, to be no help for the plaintiff but a resort to oral testimony, or written testimony, *extra* the deed, if he would explain the circumstances surrounding the transaction, or exhibit the intent of the parties at the time when the deed was made. Yet this is just what he objects to; he finds fault with the court in admitting, on part of the defendant, the articles of agreement, though, of all other evidence, this is the most safe and the best calculated to show the intent of the parties in case of fraud or mistake, or to explain any ambiguity in the deed. For the purposes mentioned, even oral testimony would be admissible; much more the previous writings leading to the execution of the deed. As is said in Story's Eq., vol. 1, sect. 160, "There is less difficulty in reforming written instruments, where the mistake is mainly or wholly made out by other preliminary instruments, or memorandums of agreement. The danger of public mischief or private inconvenience is far less

[Koch *v.* Dunkel.]

in such cases than it is when parol evidence is admitted. If, then, there was any ambiguity in the deed, arising from a conflict between the calls and the courses and distances, or any allegation of mutual mistake, the agreement was properly admitted. We conclude, therefore, that the learned judge, to whom this case was submitted, in all things well and properly decided it.

The judgment is affirmed.