ROBERT MORSE v. C. G. ROLLINS.

121 537
20 SC ¹566

121 537
f 36 SC ¹ 66

121 537
f40SC¹310

ERROR TO THE COURT OF COMMON PLEAS OF WARREN COUNTY.

Argued May 3, 1888—Decided October 1, 1888.

1. The courses and distances in a deed always give way to the boundaries found upon the ground, or which are supplied by proofs of their former existence, when the marks or monuments are gone: Lodge v. Barnett, 46 Pa. 477.

2. The deed, under which a defendant in ejectment claimed, called for a line of a certain length. The fact was, that by a survey made by the parties to the deed, that line was marked upon the ground of a shorter length and the deed afterwards drawn with the difference unobserved: *Held*, that the line of the deed must be controlled by the line as marked on the survey.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 272 January Term 1888, Sup. Ct.; court below, No 6 September Term 1885, C. P.

On June 2, 1885, an ejectment was begun by Charles G. Rollins against Robert Morse, to recover a strip of ground three tenths of a rod wide and 26 rods long, in Glade township. The plea was, not guilty. The case may be illustrated by the following sketch, observing that the courses and distances are from the deed of C. G. Rollins to Geo. W. Allen, and if drawn to scale would make a trapezoid instead of a parallelogram.

Public road.
N. 38, 30 W., 7

C. G. Rollins
S. 43, 15 W., 26

N. 43, 15 E., 21.8.
D. C. Hook.

7.4
Allegheny River.

At the trial on January 3, 1888, it was made to appear that in August, 1875, Charles G. Rollins, the plaintiff, was about to convey to Geo. W. Allen one acre of land from the east end of a larger piece he owned, and the parties had Z. H. Eddy, a surveyor, to go with them upon the land to make the survey. Mr. Eddy began at the corner of D. C. Hook and first ran around a piece of ground 7 rods in width, on the public road; but, on computing the quantity he found that it made more than one acre, and that 6.7 rods in width on the road, would make exactly an acre. He then set back three tenths of a rod on the road, and at that point set a post, making the width exactly 6.7 rods on the road. From this point he ran a line to the river, parallel with the east line, and there set a post and marked three living trees as witnesses to the post. Mr. Eddy afterwards drew the deed, which by request of Mr. Allen was made to his wife Amelia Allen, dated August 27, 1875, and by mistake made the distance on the road read, seven rods to a post, instead of six rods and seven tenths of a rod to a post, as it should have read. The description in the deed as written was: " Beginning at a post in the bank of the Allegheny river, at the southwest corner of land owned by D. C. Hook: thence, along Hook's west line, north 43 degrees, 15 minutes east, 21.8 rods to a post on the public road leading to Warren; thence, along said road, north 38 degrees, 30 minutes west, seven rods to a post; thence south 43 degrees, 15 minutes west, 26 rods to a post on the bank of the Allegheny river; thence up the river to the place of beginning, containing one acre of land." Mr. Rollins executed the deed on August 25, 1875, without discovering the mistake. Immediately after the survey, Mr. Allen built a board fence, Mr. Rollins furnishing part of the material, exactly on the line established by the surveyor, Mr. Eddy; running from the post which was set at the road, to the post at the river witnessed by the three trees. A year or two later a stone post was set in the place of the wooden post at the road. No witness saw the stone post put there, but the witnesses who helped make the survey and build the fence, testified that the stone post was set exactly where the wooden post stood and at the end of the fence. The deed to Allen was recorded on August 26, 1875, and the land was afterwards sold at sheriff's sale to S. T. Allen, by whom it was

sold to James Clark, Jr., who conveyed to Robert Morse, the
defendant, on February 21, 1879.   At the date of this last con-
veyance, the fence, as built by Geo. W. Allen, was standing
on the line established by surveyor Eddy, and the stone post
was standing at the end of the fence where it had been set in
the place of the wooden post.   Two of the witness trees at the
river were also standing.   In the summer of 1885, against the
protest of the plaintiff, the defendant Morse moved the fence
three tenths of a rod west, upon the land of the plaintiff, when
the alleged mistake in the deed was discovered and this eject-
ment brought.

The court, BROWN, P. J., after reviewing the facts answered
the defendant's points and charged the jury:

Defendant's points, inter alia:

4. That even though the defendant had constructive notice
of plaintiff's claim to the land in dispute, he, the defendant,
was not obliged to inquire beyond the deed on record, of said
plaintiff to Amelia Allen, through whom the defendant claims
title; an examination of said deed would have shown title in
defendant for the land in dispute.

Answer: We affirm this point with the exception of so much
as says, " an examination of said deed would have shown title
in defendant for the land in dispute."   We say that the de-
fendant should have inquired for the landmark called for in the
deed.[2]

5. This is an equitable ejectment, and takes the place of a
bill in equity to·reform the deed from the plaintiff to Amelia
Allen, through whom the defendant claims title.   There being
no such evidence in this case as would move a chancellor to re-
form the deed from the plaintiff to Amelia Allen, your verdict
should be for the defendant.

Answer: Refused.[3]

6. Under the undisputed evidence in this case, your verdict
should be for the defendant.

Answer: Refused.[4]

*        *        *        *        *        *        *

[We say to you, that the question of fact upon which this
case turns, is this: Are you satisfied clearly from the evidence,
that a post was put into the ground, and agreed upon between

these parties as the landmark? And are you satisfied that this post was where the plaintiff claims it to be? If so, we say to you, that that landmark would control, and if it differ from the distance, the landmark must govern. This is a rule of law, which is well settled. It is simply that question of fact, you are to pass upon. If you find a landmark, a mark put in the ground to limit the extent of the fence, then your verdict should be in favor of the plaintiff.] [5] If not, although they talked about a strict acre, yet if it was to cover the land to the point where the 7 rods measurement would reach, then your verdict should be in favor of the defendant.

The verdict of the jury was in favor of the plaintiff, and judgment was entered thereon. Thereupon the defendant took this writ, assigning as error, inter alia:

2–4. The answers to the defendant's points.[2 to 4]

5. The part of charge embraced in [ ] [5]

*Mr. Geo. H. Higgins* (with him *Mr. O. C. Allen*), for the plaintiff in error:

1. That neither the stone nor the fence was notice, neither of them being landmarks called for in any of the deeds in the chain of the defendant's title, the evidence, moreover, failing to show that said stone was ever intended as a corner or placed there by any person having authority to establish a corner, is a proposition which scarcely needs any authority to support it: Stuven v. Kalchreuter, 8 W. N. 44. And that the possession of the grantor of the land in dispute is not notice to purchasers, is plainly decided in Stiffler v. Retzlaff, 9 Cent. R. 681; s. c. 20 W. N. 303; Hottenstein v. Lerch, 104 Pa. 454.

2. That the proposition that even though the defendant had constructive notice of plaintiff's claim to the land in dispute, he was not bound to inquire beyond the plaintiff's deed to Mrs. Allen, is correct, we need cite only Stiffler v. Retzlaff, supra; Woods v. Farmere, 7 W. 384; Dickinson v. Beyer, 87 Pa. 281. A purchaser of the legal title cannot be affected by any latent equity of which he has not actual notice, or which does not appear on some deed necessary to the deduction of his title: Peebles v. Reading, 8 S. & R. 496.

3. This action was, in effect, clearly an equitable ejectment,

to re-form the plaintiff's deed to Amelia Allen. There were no disputed facts, and the evidence showed that the defendant was an innocent purchaser for value. Under such a state of facts, a chancellor could not decree a re-formation of the deed, and the court should have directed a verdict for the defendant: Edwards v. Morgan, 100 Pa. 335.

4. There is no question but that landmarks govern courses and distances when the original landmarks are on the ground. "But, on all authority, in the absence of original marks found upon the ground, calls must govern, rather than courses and distances:" Koch v. Dunkel, 90 Pa. 268. It follows, of course, that where there are neither original marks found upon the ground, nor calls in the deed, there is nothing left to depend upon except the courses and distances in the deed: Wharton v. Garvin, 34 Pa. 340. If parol evidence is to be received to establish a line, where there are no original marks upon the ground, and received too in contradiction of the description of a recorded deed, who can see where such a rule will lead?

*Mr. W. M. Lindsey* (with him *Mr. J. O. Parmlee*), for the defendant in error:

1. The undisputed fact was that the surveyor and those with him set a post at six and seven-tenths rods from the northeast corner, instead of seven, and hence the distance in the deed must give way to the monument on the ground. Can it make any difference that the monument fixed for the corner was a stake instead of a tree? "On this point, there is nothing more fixed or better ascertained in the law of this state. The courses and distances in a deed always give way to the boundaries found upon the ground, or supplied by the proof of their former existence, when the marks or monuments are gone:" AGNEW, J., in Lodge v. Barnett, 46 Pa. 477. "A post, a stake, a stake and stones, or a stone, are common objects called for in the survey of boundary lines in an improved country. If the evidence satisfies the jury where the posts were fixed for the corner, and that a line drawn from one to the other bounds the defendant's possession, he is entitled to a verdict. The evidence on that subject does not contradict the deed, but fixes the call of the deed and applies it on the ground:" Alshire v. Hulse, 5 Hamm. (O.) 534.

And see Koch v. Dunkel, 90 Pa. 264; Dawson v. Mills, 32 Pa. 302; Blasdell v. Bissell, 6 Pa. 258.

2. It is urged that the defendant purchased without notice. His deed, however, and all the deeds from Rollins down, call for a post, as a monument set for that corner. It was his duty to inquire for this monument and if it was gone, to inquire for its former location. Not having done so he is to be visited with constructive notice: Parke v. Neeley, 90 Pa. 52; Leonard's App., 94 Pa. 168.

OPINION, MR. JUSTICE STERRETT:

The only defence to this action of ejectment was, that the title to the strip of land in controversy passed by deed of August 25, 1875, from plaintiff below to Mrs. Amelia Allen, whose interest was subsequently acquired by defendant. The deed, according to the courses and distances given therein, embraces the land in controversy; but evidence was introduced by the plaintiff to prove that it was excluded by the survey made upon the ground and assented to by the parties at the time of the conveyance. The length of the line along the public road, north thirty-eight degrees and thirty minutes west, as given in the deed, is "seven perches to a post." According to the evidence, that line, as located on the ground, was three tenths less than seven perches, and the post called for at its terminus was actually set there as a monument to mark and designate the northwesterly corner of the lot intended to be conveyed. On the line running thence south forty-three degrees and fifteen minutes west, the partition fence between vendor and vendee was built and afterwards maintained. The undisputed testimony of the surveyor and his assistants was, that they set the post at six and seven-tenths rods from the northeasterly corner of the lot as claimed by plaintiff below. If the jury found, as they doubtless did, that a survey was actually made on the ground, that the northwesterly corner of the lot was fixed and designated by a stake set in the ground for that purpose, and they were further satisfied that the location of that monument was at the point claimed by plaintiff, it was their duty to find in his favor. The evidence certainly warranted that conclusion; and, as was said in Lodge v. Barnett, 46 Pa. 477, no principle is better settled in this state than

that "the courses and distances in a deed always give way to the boundaries found upon the ground, or supplied by proof of their former existence, when the marks or monuments are gone."

The case was well tried. The evidence presented questions of fact that were fairly submitted to the jury. We find nothing in either of the specifications of error that requires a reversal of the judgment.

Judgment affirmed.