## Goodman v. Petroleum Engineering Corporation.

Argued October 28, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*F. D. Gallup* of *Gallup and Potter,* and with him *L. H. Simons,* for appellant, cited: Skillman v. Magill, 98 Pa. Superior Ct. 72.

*John P. Devlin,* and with him *J. M. Cotter,* for appellee.—The construction of the deed was for the court: Miles Land Co. v. Hudson Coal Co., 246 Pa. 11; Beam v. Punxsutawney Playground Assn., 81 Pa. Superior Ct. 579.

Monuments are the best, primary and original evidence: Thompson v. McFarland, 6 Pa. 478; Keech v. Del. Co. Tr. Co., 297 Pa. 442.

Opinion by Cunningham, J., February 27, 1931:

Plaintiff has a verdict, with judgment thereon, in an action of ejectment wherein, under his writ as amended, he sought to recover possession of a small

triangular plot of ground (adjoining on the north a larger lot also triangular in form and admittedly owned by him) in the City of Bradford, McKean County. Defendant's motion for judgment in its favor n. o. v., based upon its point for binding instructions, was overruled, as was also its motion for a new trial, and it now appeals to this court. Its contention is that, under all the evidence, the trial judge should have affirmed its point or subsequently entered judgment in its favor notwithstanding the verdict, or at least have granted it a new trial.

We are therefore required to examine the rather voluminous record, in the light most favorable to plaintiff, for the purpose of determining whether there was sufficient legally competent evidence to justify a finding in his favor. In such examination it must also be kept in mind that, although the credibility of the witnesses was for the jury, the important witnesses in this case were not called to testify, primarily, to the existence or non-existence of facts, whether this or that event did or did not occur, but rather to give their deductions and inferences with respect to the actual location on the ground of controlling property lines, et cetera; the fundamental inquiry, therefore, relates to the respective bases for their conclusions.

Each party claimed title under recorded deeds to the land in dispute and the defendant, in addition, alleged adverse possession thereof since 1902 but, under our conclusion, it will not be necessary to consider the question of adverse possession. For the purpose of defining the underlying issue as simply and clearly as possible, a few uncontroverted facts, together with the main contentions of the parties, may now be stated. C. C. Melvin, at one time the owner of a large farm, was the common source of title. The title to the northern portion of this farm, containing one hundred

acres, was later vested in the Producers Consolidated Land and Petroleum Company and its southern boundary, running east and west a distance of approximately 5,900 feet, became a recognized property line in the community, familiarly known as "the P. C. L. line"—the designation by which it will be referred to herein. Speaking generally, defendant's property lies north and plaintiff's south of the western end of this line. Plaintiff's land is in the form of a triangle, the base of which constitutes his southern line and extends along the north line of the right of way of the Olean, Bradford and Warren Railroad between points thereon which are not in dispute, the eastern corner being on the P. C. L. line. The controversy centers around the proper location of the apex of plaintiff's triangle of land. Both parties agree that its apex is also on the P. C. L. line, but defendant contends that the distance northwardly along the left side of the triangle (facing north) from the western corner of its base to the true location of the P. C. L. line is only about 119 feet, whereas plaintiff claims its true location is, as shown by his deed, approximately 163 feet north of this western corner; this disputed difference of 44 feet in the length of the western boundary line of plaintiff's property defines the length of the base of the smaller triangular piece now in dispute, the apex of the triangle described in the writ being the fixed eastern corner of the larger tract. Both parties also seem to agree that a certain corner, referred to in the testimony as the "Melvin corner," is located on the western boundary line of plaintiff's property, 42.8 feet south of the P. C. L. line. Defendant asserts that the Melvin corner is only 76.8 feet north of the fixed western corner of plaintiff's land, but plaintiff says it is about 119 feet north of that corner.

It is therefore apparent that the whole question in

this case turns upon the true location on the ground of the P. C. L. line. If this line is approximately 163 feet north of the fixed western corner on the base of plaintiff's land, then plaintiff is entitled to recover and defendant's existing buildings encroach toward the south over the P. C. L. line and are partially located on plaintiff's property; on the other hand, if the P. C. L. line is only about 119 feet north of that corner the defendant is entitled to a judgment in its favor and its buildings are more than 20 feet north of the P. C. L. line. This was the theory upon which the case was tried. In his charge the learned trial judge, after instructing that the burden was upon plaintiff to satisfy the jury of the correctness of his contention by a fair preponderance of the evidence, and that he must recover on the strength of his own title, and, after stating that the eastern corner on the base of plaintiff's land was an established point on the P. C. L. line, continued: ''Now it all depends upon the true course of that line as to whether the defendant is encroaching upon the lands of the plaintiff; that is all there is to it.'' The question of the true location of the line upon the ground was submitted to the jury with the correct instruction that the plaintiff's property ran to it and ''no matter what distances are called for in [his] deed, the call in the deed is the P. C. L. and P. line; if he is short in measurement, it is not a bit of difference but he cannot stretch it over the P. C. L. and P. line. ...... The call is the monument to which the line goes, no matter what the distance may be.'' We therefore turn to a consideration of the substance of the evidence bearing upon that question.

Plaintiff rested his title upon a deed to him which described the land as follows:

''Beginning at a point [the west corner of the base above mentioned] where the north line of the right

of way of the Olean, Bradford and Warren Railroad Company intersects the line of the east side of land of A. D. Longfellow (formerly Patterson lot) *thence following said east line in a northeasterly course until said east line meets the west bounds of lands of C. C. Melvin; thence by a line due north far enough so that said line will strike the lands of the Producers Consolidated Land and Petroleum Company about one hundred and sixty-three (163) feet;* thence by lands of said Producers Consolidated Land and Petroleum Company in a southeasterly direction two hundred and forty-two (242) feet to the north line of the right of way of the Olean, Bradford and Warren Railroad Company; thence by said north line of right of way west one hundred and eighty (180) feet to the place of beginning.''

The southern boundary of defendant's land, with which alone we are concerned, was described in the succession of deeds under which it claimed title, as running

''......east and along the said northern line of lands of A. Longfellow sixty-eight (68) feet to a point in the western line of lands formerly owned by Elizabeth Riley [now owned by plaintiff], said point being also at the Melvin farm corner; *thence north by the west line of said Riley lot forty-two and eight-tenths (42.8) feet to an iron post in the south line of lands formerly owned by the Producers Consolidated Land & Petroleum Company;* thence easterly and along the said south line of the lands formerly owned by the said Producers Consolidated Land and Petroleum Company one hundred and sixty and one-tenth (160.1) feet to an iron post in the northern line of the right of way formerly occupied by the Olean, Bradford and Warren Railway Company......''

Stating the case in another way, it may be said that

the "iron post" in the northern line of the right of way of the Olean, Bradford and Warren Railroad is conceded to form, for both lots, the common corner on the east. Plaintiff, however, contended that at the western line of his property the Melvin corner was 42.8 feet north of the point where defendant located it, and that the P. C. L. line, therefore, was correspondingly 42.8 feet farther north.

To establish his claim, plaintiff called three surveyors who had made maps of the land at various periods. The first of these, A. L. Benton, upon whose testimony plaintiff chiefly relied, testified that he made a map—introduced as exhibit No. 2—from the description given in the deed from Melvin to Prentice (an intervening owner of defendant's land) for the 100-acre tract. He also made a second map from a survey which he made on the ground, using as his distances those given in the same deed. He commenced his survey by starting at what he claimed was the Melvin corner, which according to him was a well-established corner marked by an iron stake and pointed out to him by the plaintiff and two other unnamed witnesses. By this survey he undertook to establish the P. C. L. line, which was the same as the south line of the Prentice property. He knew that it was a well-known line and an old definitely established boundary, but he found no monuments or marks on the ground which would fix its location, except a stake on the northern boundary of the right of way of the Olean, Bradford and Warren Railroad. (This stake is undisputed; it marks the common corner of the two lots on the east and has already been referred to.) He ran the P. C. L. line only 600 feet to the east of plaintiff's property, although its total length to the eastern part of the 100 acres was some 5,900 feet. The P. C. L. line was, he said, the true boundary of plaintiff's property to the north and

he found it ran 42.8 feet above the Melvin corner. The end of the P. C. L. line to the west he judged to be under a building on the defendant's property which encroached upon plaintiff's land. He had prepared a third map including plaintiff's property, which was made up, as he stated, from distances given in plaintiff's deed. In this, however, as in his other maps, he found the distances of the plaintiff's property to be as follows: 159.6 feet along the west, 160.1 feet along the north, and 200.8 feet along the Olean, Bradford and Warren Railroad right of way to the southeast. His statements must be contrasted with the distances given in the Goodman deed itself, which are respectively 163 feet, 242 feet and 180 feet.

The second surveyor for the plaintiff was F. M. Webster. He testified he had surveyed the Melvin farm in 1900 in company with one of the Melvins, and had made a map of that property, including the Riley (now Goodman) lot; that he had driven an iron stake in the Melvin corner, then marked by a pile of stones which lay under the Riley house, at the present time occupied by the plaintiff; that the distance from the Melvin corner to the P. C. L. line was 42.8 feet. He introduced this map, which he stated to be to scale, as exhibit No. 7. The figures on the map showed the distance as only 116.8 feet from the Olean, Bradford and Warren Railroad to the P. C. L. line, including the accepted distance of 42.8 feet from the Melvin corner to that line. When asked to scale the distance on the map from the Olean, Bradford and Warren Railroad to the Melvin corner, Webster found it to be 76.8 feet, which is the same measurement as that contended for by the defendant. On the other hand, he testified that the Goodman lot, as marked on Benton's map, was the same as the Riley lot on his map, and that the western lines of the two maps were identical. When confronted with the distances

as marked by himself, he attempted to explain the discrepancy by saying that he might have made a mistake in the scale; the explanation is not convincing and this exhibit practically puts the plaintiff out of court.

C. T. Jacobson was also called by plaintiff and testified that he too had made a survey of plaintiff's lot. He claimed to have found the Melvin corner, which was marked by an iron stake, 116 and some tenths feet from the railway, but he could not find the P. C. L. line. He stated his inference to be that the corner of the P. C. L. line lay under the building on the defendant's property, but admitted that he could not make the Goodman deed "go."

A fourth witness for plaintiff was Duke Price, who testified that he now owns the land referred to in the deeds as that of A. Longfellow, the property to the west of plaintiff's lot; that the northern line of his own property runs into the Melvin corner; that he was present when Webster found that corner, and that it was located under the Riley house.

Upon its part, defendant relied principally on the testimony of two surveyors—Wise and Colegrove. Wise stated that they had made a survey and had run out the lines of the Melvin farm and of the 100-acre Prentice lot in their entirety, carrying the P. C. L. line its full 5,900 feet to the east. At the eastern extremity they began at a reentrant angle on the south line of the 100 acres, at a point marked by an old post hole and a pile of stones; 300 feet to the west they found an old blaze, and 743 feet away an old pine tree similarly blazed. From then on they found some 20 to 25 blazes on trees of equal age, an old fence, vegetation marking the boundary, and two buildings on the line, one belonging to T. H. Pierce. They found a pipe in the east line of the defendant's property (the "iron post" at the common corner)

and terminated at a corner in the west line of the plaintiff's property, marked with an iron post three inches in diameter, together with a couple of other small pipes in the immediate vicinity less than a foot away. This corner was only three or four feet off the "sight" as determined by them for the line. The line, as located on the ground, corresponded with the line drawn from the calls in the deeds. They found the Melvin corner 42.8 feet below the western extremity of the P. C. L. line, and the distance from the Melvin corner south to the Olean, Bradford and Warren Railroad to be 76.6 feet, making the total length of the western line of plaintiff's property 119.4 feet. The witness pointed out that the northern line of the Melvin farm was a warrant line, which, like all other warrant lines in the neighborhood, was run east and west, and that the P. C. L. line ran parallel with, and to the south of, this warrant line. This fact was established by various transverses, by the directions in the deeds, and by the course on the ground. In this connection it should be noted that the line as located by plaintiff's witness, Benton, would not run east and west and would not parallel the warrant line. Wise said that the P. C. L. line was well-known, both to him and to the community generally, and its location was undisputed; his testimony was later corroborated by Colegrove in every detail.

Wise's statements as to the house of T. H. Pierce were reenforced by the testimony of Pierce himself. He stated that he was present when the P. C. L. line was run in 1886 and that his house was moved upon the line, and in fact encroached on the land to the south. He further said he had helped to locate the line itself, had established it at its western end, and had moved an old enginehouse to the north back at least 15 feet from the line. This enginehouse was the original building on the defendant's property; it has

been added to at various times. According to the testimony of Benton, a corner of the enginehouse, together with a part of the newer buildings, extended upon plaintiff's property, which would necessarily be the case if plaintiff's theory were accepted. The enginehouse, however, appears on Webster's original map, which was made in 1900, and according to this map is some 30 feet from plaintiff's northern point. Webster himself testified that it was the same building as now occupied by defendant and that it had been incorporated into the newer buildings.

As has been pointed out, the success or failure of plaintiff's case depends entirely on the location of the P. C. L. line. This line was located by Webster and, although he states that the Benton survey was the same as his, and that the western line of plaintiff's property was therefore also the same, the map which he prepared some thirty years ago shows the distance to the P. C. L. line from the railroad to be some 116 feet, or virtually the distance contended for by the defendant (119.4 feet). The testimony of both Benton and Jacobson shows a total inability to establish the P. C. L. line by any marks on the ground. Their conclusions as to its course were arrived at by taking distances and courses from the various deeds to the properties. All of the plaintiff's witnesses seem to agree as to the location of the Melvin corner and to place it at a point 42.8 feet above the place at which defendant locates it. A close scrutiny of the testimony, however, shows that this corner was pointed out to plaintiff's surveyors by his witnesses and arbitrarily assumed as a starting point for their surveys. According to Webster's map, this corner is only 76 feet from the railroad right of way. If, as plaintiff's witnesses contend, the Melvin corner was a well-established monument, it should have been located without difficulty. Nevertheless, while their state-

ment is that this corner is under what was once the Riley, and now the plaintiff's house, no attempt was made to show the location of that house.

Another significant feature is that this corner necessarily also forms the corner of the lot of Duke Price mentioned above as the successor in title to the Longfellow named in the deeds. If the Melvin corner actually lies 42.8 feet to the south of the spot where the plaintiff would place it, the northern line of Price's property would also be the same distance to the south and he would be deprived of that much ground. Plaintiff, however, presented no evidence to show that the adoption of the theory of defendant would necessarily result in thus cutting off part of the Price property. On the contrary, one of the defendant's witnesses was asked on cross-examination about certain garages recently built by Price to the north of his line, evidently for the purpose of showing that his line lay farther north. In answer to these questions, the witnesses stated that the garages were on the defendant's property and that Price had asked, and defendant had granted, permission for their erection. This testimony was not contradicted.

On the other hand, the witnesses for the defendant located the P. C. L. line throughout on the ground, and found numerous marks and monuments which fully corroborated the survey from the deeds. Their testimony was not successfully assailed. "It is well settled that when the courses and distances given in a return of survey differ from the natural and artificial boundaries on the ground, the latter shall govern. Where there are no such monuments on the ground and there is a discrepancy between the courses and distances given and the adjoining lands called for, the latter will prevail: Koch v. Dunkel, 90 Pa. 264;" Payne v. Howard, 107 Pa. 579, 583. "The courses and distances in a deed always give way to the boundaries

found upon the ground, or supplied by proof of their former existence, when the marks or monuments are gone'': Rook v. Greenewald, 22 Pa. Superior Ct. 641, 649, citing Morse v. Rollins, 121 Pa. 537; Lodge v. Barnett, 46 Pa. 477; Carroll v. Miner, 1 Pa. Superior Ct. 439, 455. See also Nicholson's ''Pennsylvania Law of Real Estate,'' page 220, section 176 (3rd Edition). As stated in the Carroll case, a marked line is a very common monument.

The application of these established principles of law to the foregoing summary of the evidence on both sides of the case can result in but one conclusion, namely, that plaintiff failed to produce any legally competent evidence which would reasonably justify a jury in returning a verdict in his favor. A jury should not be permitted to disregard the positive and convincing testimony of the surveyors called by defendant and adopt an arbitrary boundary line unsupported by any marks on the ground and directly contradicted by an old map made by one of plaintiff's surveyors.

It is obvious that the Goodman deed is a blunder throughout and that its distances can receive no recognition. It gives the northeastern line of plaintiff's property as 242 feet, whereas plaintiff's own witnesses found it to be only 160 odd feet, substantially the length stated by defendant. The distance along the railroad right of way is some 20 feet off, according to the same tests. Under all the testimony, the only possible conclusion would seem to be that the length of the western line, as given in the deed, must have been mistakenly arrived at by a duplication of the distance between the Melvin corner and the P. C. L. line. When 42.8 feet are subtracted from the total distance as given in the deed, we reach practically the result contended for by the defendant. This, again, accounts for the position of the original building on

defendant's property, which would otherwise have been an encroachment on plaintiff's land for some thirty years. Upon consideration of the whole record, it is clear that what plaintiff claims is the Melvin corner is in fact the end of the P. C. L. line. Any other conclusion is without substantial foundation in the evidence.

We shall not discuss the evidence as to adverse possession, although it may be said that it indicates the defendant company has exercised full rights of ownership over the land in dispute for more than twenty-one years without adequate protest from the plaintiff.

The first, third, fourth and fifth assignments of error are sustained; the judgment is reversed and is here entered in favor of appellant.