## Steigleder et al. *v.* Marshall et al., Appellants.

. [Marked to be reported.]

*Deed— Reservation — Description— Location — Evidence—Question for jury.*

A question of location or the application of a grant to its proper subject-matter is a question of fact to be determined by the jury by the aid of extrinsic evidence.

A deed reserved " the six acre field now occupied by Dr. William Sarver and David Welsh, out of the above described land." The evidence showed that the grantor owned a farm situated upon one side of a run. Upon the opposite side of the run, and disconnected from his farm, he owned a field containing about six acres. In this field there was a fence which fenced off a narrow strip along the run containing sixty-three and one half perches, used for a house and garden. The evidence showed that the whole field was a separate piece of ground detached from the grantor's farm, and originally known as the six acre field. Welsh lived in the house and occupied the garden. Sarver occupied the part of the field beyond the fence as a pasture. Welsh obtained water from a spring in the pasture field, and also used a small part of it for yard purposes. *Held*, that the question whether the grantor reserved the whole field, or only the part used for pasture, was a question of fact for the jury. The question involved was one not relating to the construction of the reservation, but to the identity of the location.

Argued Oct. 27, 1893. Appeal, No. 165, Oct. T., 1893, by defendants, Robert Marshall and C. S. Vezie, from judgment of C. P. No. 3, Allegheny Co., May T., 1892, No. 576, on verdict for plaintiffs, Catherine Steigleder et al. Before STER-

RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Ejectment for six acres and one hundred and five perches of land.   Before KENNEDY, P. J.

Defendants, Robert Marshall, and C. S. Vezie, Marshall's lessee f ir oil and gas purposes, filed a disclaimer as to six acres and forty-one and one half perches, and filed their plea as to the remainder, consisting of sixty-three and one half perches.

At the trial, it appeared that on April 1, 1865, Benjamin A. Mevey, by deed conveyed a farm to Thomas Mitchell and Charles H. Armstrong.   The deed contained this clause : " Reserving the six acre field, now occupied by Dr. William Sarver and David Welsh out of the above described tract of land." Plaintiffs claimed title through Mevey and Sarver.   Defendants claimed title through Mitchell and Armstrong.

The court charged in part as follows :

" It is a pure question of fact as to whether, in 1865, these parties, Mr. Mevey and Mitchell and Armstrong, intended to in this reservation, and did in the reservation, reserve to Mr. Mevey the whole of that piece of land extending down to Robinson's run." [1] . . . .

" Stress has been laid upon the fact that this man Welsh occupied a portion of the pasture field that was used by Dr. Sarver, and that that is what Mr. Mevey meant in his reservation, namely, ' the six acre field now occupied by Dr. Sarver and David Welsh,' and that Welsh did at that time and subsequently occupy even the pasture field as well as the garden ; that he occupied the pasture field by using the spring and the spring house that was on it.   It is for you to say from all these facts, circumstances and testimony, whether that is the occupancy that Mr. Mevey had in his mind when he made this reservation in the deed, or whether he intended to reserve, and did reserve, not only the pasture field that was occupied by Dr. Sarver, including the spring that was used by Welsh, but also the land embraced in the garden which was used and occupied by Welsh. It is admitted by both sides that Welsh did occupy the garden and the house, but the defendants claim that that wasn't what Mr. Mevey meant ; and it is for you to say whether simply the occupancy of this pasture field, by using the water and the

spring house, was what was in Mr. Mevey's mind, or whether he intended to and did reserve the whole tract of land extending down to the run, as claimed by the plaintiffs." [2]

Verdict and judgment for plaintiffs. Defendants appealed.

*Errors assigned* were (1, 2) instructions, quoting them.

*Charles P. Orr, John B. Chapman* and *Thomas C. Lazear* with him, for appellants.—The court should not have permitted the jury to construe the deed: Neilson v. Harford, 8 M. & W. 806 ; 2 Parsons on Contracts, 4, note (*b*) ; Duffield v. Hue, 129 Pa. 94; 1 Taylor on Evidence, part 1, ch. 3, § 43.

Extrinsic evidence must be received to enable the court to ascertain the nature and qualities of the subject-matter; 2 Taylor on Evidence, part II, § 1194.

The words "six acre" are merely descriptive of the field. As to what is a field, see Bouvier's L. Dict.; 1 Chit. Pr. 160.

What are the boundaries of the land, is a question of law ; where the boundaries are, is a question of fact: 1 Thompson on Trials, § 1461.

The court ignored the rule that the deed or grant must be construed most strongly against the grantor, and that such rule applies with especial force to a reservation or restriction where there is a withholding of something from the grant: Klaer v. Ridgway, 86 Pa. 529.

What one party meant cannot control the meaning of a contract: 2 Parsons on Contracts, 7.

Even if the court were satisfied that David Welsh did not have any right to the field, and occupied the house and garden only, yet it should have construed the exception, rejecting the description of occupancy by David Welsh, under the rule, falsa demonstratio non nocet: Shep. Touch. 274; Elphinstone on Interpretation of Deeds, pp. 104, 155, 168; Jackson v. Clark, 7 Johns. 218.

Appellants presented their first point with the intention of procuring a construction of the deed. This was affirmed, but we apprehend the effect of this affirmance was entirely lost on the jury by reason of that portion of the charge delivered after the points were read, and which is assigned for error in the second assignment. Where a point was ruled both ways, but

the erroneous ruling was last, and therefore likely to have made lodgment with the jury, this court reversed where harm had been done: Rice v. Com., 100 Pa. 32.

*Charles M. Thorp, W. B. Rodgers* with him, for appellees. —This case involved the determination of a question of fact, namely, what portion of the farm of Benjamin A. Mevey was on April 1, 1865, and Oct. 10, 1865, occupied by Dr. William Sarver and David Welsh. It was the province of the jury to decide this question, there being a conflict of evidence as to just what the limits of David Welsh's occupancy were.

The court below did not, as claimed by appellants, recognize as a proven fact in that portion of his charge embraced in the second assignment that Welsh occupied any portion of the pasture lot. He merely recognized the evidence as submissible to the jury that Welsh used the spring, and left it to the jury to find whether this evidence established Welsh's occupancy of any part of the pasture field. The language of the court, if open to complaint at all, was likely to do harm to plaintiffs, because the court spoke of Welsh's going to the spring as an occupancy of a part of the pasture lot.

OPINION BY MR. JUSTICE THOMPSON, December 30, 1893 :

The reservation in the deed of B. A. Mevey by which he reserved " the six acre field now occupied by Dr. William Sarver and David Welsh, out of the above described land," is the subject of contention in this ejectment. Mevey owned a farm situated upon one side of a run called Robinson's Run, and disconnected from it and upon the opposite side of the run a field containing about six acres. In this field there was a fence which at one time ran along the run, and also a second one which fenced off between it and the run about sixty-three and five tenths perches, used for a house and garden. The appellees, the plaintiffs below, contended that by the reservation in the deed the field up to the run was reserved, while the appellants contended that the field up to the garden fence was reserved. The evidence shows that the whole field was a separate piece of ground detached from Mevey's farm, and was originally known as the six acre field. Mevey's son testified substantially that it was known as the six acre field, that it was separate from the other

farm, that it was a piece by itself, that Welsh was living in the
house and occupied the garden, and Doctor Sarver occupied
the pasture field. The language of the reservation is " the six
acre field now occupied by Doctor Sarver and David Welsh,"
and, as testified, the former occupied a portion of the field for
pasture and the other the house and garden. The appellant's
contention was that the portion of the field used for pasture,
excluding that portion used for the house and garden, was the
extent of the reservation, because there was a joint user of such
portion by Welsh and Sarver, one for pasture and the other
for obtaining water from a spring upon it, and a small part
of it for yard purposes, and because it was fenced off from the
garden and house and thus made a distinctive field. When
the grantor used the words " now occupied by Doctor Sarver
and David Welsh " it is clear they did not relate to the user of
it in going to and from the spring, or that of a small piece used
in connection with the house possibly as a yard, but an actual
or distinctive occupancy such as was indicated by the use of
the house and garden as such, and that for pasturage as such.
He thus indicated the entire field not to be determined by the
interior fence referred to, but by this obvious occupancy of
the different parts of it by those two persons. As this piece
of land was detached or disconnected from the grantor's farm,
as it was a six acre field, as it was occupied one part by Welsh
for the house and garden and the other by Dr. Sarver for pas-
turage purposes, it is not within the range of probability that
the grantor reserved the part used for pasture only and excepted
from the reservation the part occupied by the house and gar-
den, thus isolating a small strip of sixty-three and five tenths
perches. Upon the trial, without objection, the proofs were di-
rected to the character of occupancy by Sarver and Welsh, and
in view of them the court properly submitted to the jury as a
question of fact whether the reservation applied to the whole of
the field extending down to Robinson's Run.

The appellants' first point, which was in effect that if the field
was well marked and limited by fences, on or before April 1,
1865, and contained six acres or thereabouts, and was then in
possession of Dr. Sarver, that David Welsh also had possession
of a part thereof at the same time, and that no other inclosure
or piece of the farm described in the deed from Mevey to Mitch-

ell and Armstrong, dated April 1, 1865, could be described by the same language, or words of description as embraced in the exception contained in the said deed, then the plaintiffs are not entitled to recover and the verdict should be for the defendants, which was affirmed by the court, and the proofs which were directed to the occupancy of the whole field, or to the part exclusive of the part used for house and garden, demonstrate that the question involved was one not relating to the construction of the reservation but to the identity of the location. It was one of location, not of construction. The grantor reserved the field occupied by Sarver and Welsh and used the words in regard to such occupancy to describe such field. Under the circumstances the locality of the field thus occupied was a question of fact to be determined by the jury. In Thompson on Trials, § 1461, it is said: "A question of location or the application of the grant to its proper subject-matter is a question of fact to be determined by the jury by the aid of extrinsic evidence." Again in § 1463 it is said: "Whether land in controversy is included within a particular grant being a question of identity is necessarily a question of fact for a jury."

There was therefore no error in submitting this question of fact to the jury, and this judgment is affirmed.