# John W. Carroll *v.* Thomas Miner and James Ladden, Appellants.

*Deeds—Rules of construction, as to limitations and descriptions.*

The limitations in a conveyance are always matters of law. What lands are described are often matters of fact. The operation of the deed as to the nature of the estate is for judicial construction ; the description of the property, its extent, often is a mixed question of law and fact.

*Evidence—Deeds—Insufficient description—Extrinsic evidence.*

Where the subject matter of a grant is insufficiently described in a deed, parol evidence may be given to show precisely what was intended.

*Deed—Insufficient description—Question for jury.*

Where there is doubt as to the subject-matter demised or sold, it is a matter of extrinsic evidence to show what is included under the description as parcel of it, and in such case it is well decided that the question of the extent of the grant must go to the jury ; although it is equally clear that the rule which allows extrinsic evidence to explain the extent of the subject sold has no application where a subject-matter exists which satisfies the terms of the instrument of conveyance.

*Execution—Ambiguous description in levy—Rejection of erroneous parts.*

Where in a deed, based upon a levy, all the description of the land being vague, its identity becomes the subject of inquiry, parts of the levy should be considered, and, if being so considered, there appears to be ambiguity, then the rule applies which permits the erroneous parts of the description to be rejected, if sufficient elements are left to identify the subject of sale.

*Ambiguous levy—Construction—Question for jury—Parol evidence.*

Where taking the description as a whole there is a seeming contradiction in any attempt made to apply it to the land, and the question arises whether the levy was upon three distinct and separate lots or upon three contiguous lots upon which stood buildings, especially referred to as monuments in an underlying levy, and which were owned by the original defendant in the execution and used by him as one property, then the case presents a condition which should have been submitted to the jury, and extrinsic evidence to define the land covered by the levy is admissible.

*Sheriff's duty and presumption of performance—Construction of levy.*

It is the requirement of the law that if any part of an entire establishment or building be seized in execution the whole must be sold ; if the descriptive parts of the levy omit anything which is a parcel of a whole the entire levy must be looked to to see what was intended to be seized.

*Public Officers—Presumption of legal action by sheriff—Execution—Construction of levy—Ejectment—Words and phrases—Monument defined.*

In the construction of a levy in aid of an ambiguous description the

question is what limits the officer had in his eye at the time of the levy and what land he actually levied upon; it is to be presumed that the sheriff in making the levy acted in the performance of his duty and in obedience to law, and such presumption invokes the guiding interpretation of certain well known rules, i. e.: Even calls for adjoining tracts sometimes give way to monuments and marks upon the ground; and a monument may be defined as any object, natural or artificial, set up or adopted by the parties to identify the subject of a grant, or to define its boundaries; where a tract of land belonging to a defendant is marked and indicated in the levy by certain buildings, referred to as a monument, it is to be presumed that it was the intention of the sheriff to sell all the land covered by the buildings, and the presumption of such intent must prevail even as against an ambiguous or erroneous description by courses and distances which would bisect the buildings. It is not to be presumed that the sheriff would, by his levy, intend to divide a building by an arbitrary line running through it, so that to give possession of the land sold would result in the destruction of that which perhaps gives it its chief value, such action would have to imply an intent on the part of the sheriff to proceed in reckless disregard of his duty and of the rights of the defendant in the execution.

*Evidence—Explanation of ambiguous levy.*

It is not competent to explain or define the scope of a levy by the testimony of a bidder as to his understanding, nor by the testimony of the sheriff or others as to description read at sale.

Argued Feb. 18, 1896. Appeal No. 4, Feb. T., 1896, by defendants, from judgment of C. P. Sullivan Co., Sept. T., 1894, No. 96, on verdict for the plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Ejectment for one lot of land in Dushore, Sullivan Co., Pennsylvania.

Both parties to this action of ejectment claimed under John Miner; the plaintiff by sheriff's sale in 1892 on the McMahan judgment, and the defendant by sheriff's sale in 1890 on the Adriance Platt & Co. judgment. The case turns on the title acquired by virtue of the earlier sale. It was claimed by the plaintiff, that the levy was on lots designated on the accompanying draft as (1), (2) and (3); and by the defendants that the levy, as explained by the parol testimony, admitted and offered, was on lots (1) and (3) and the lot lying between them The last mentioned lot is the one in controversy.

RICKEY LOT

IRON PIN ×

GERMAN ST.   S. 34°W.

CENTRE ST.

JOHN MINER.

150.

NO. 2          33½

J. MINER SR.   33½

NO. 3          33½

J.W.CARROLL
(C.CRONIN)     50

NO. 1.         33½

86½ FT.

The levy was as follows:

Lot No. 1. All that certain lot, piece or parcel of land, lying and being in the borough of Dushore, Sullivan county, Pennsylvania, bounded and described as follows: Beginning on German street 25 feet back from "old tract line" at the S. E. corner of the lot contracted to John Miner, April 16, 1874, thence along said lot north 57° west 86½ feet to a corner; thence south 33° west 33⅓ feet; thence south 57° east, parallel to first line 86½ feet to German street; thence north 33° east 33⅓ feet to place of beginning. Containing 2883 ₃⁄₁₀ feet, more or less.

Also Lot No. 2. Another lot in said borough, described as follows: Beginning at the corner, 25 feet back from the "old tract line," of a lot sold to Oscar Richart, thence by the road leading from Laporte to Dushore, south 32¼° west 33⅓ feet to a corner; thence by a lot of John Miner, Sr., north 57¼° west, 86½ feet to a corner; thence north 32¼° east, 33⅓ feet to a corner; and thence south 57¼° east, 86½ feet to the place of beginning.

Also Lot No. 3. Another lot in said borough, described as follows: Beginning at a corner of John Miner, Sr., thence south, 32¼° west, 33⅓ feet to a corner; thence by lands of formerly C. Cronin, north 57¼° west, 86½ feet to a corner; thence north 32¼° east, 33⅓ feet to a corner, and thence south 57¼° east 86½ feet to place of beginning. Containing in the whole 21 perches and 48¾ feet.

And there being erected on said lots, one two-storied framed house, one framed building used as a liquor store and dwelling, a good framed barn and other out buildings. The lots all improved and under good cultivation, and some fruit trees thereon.

The testimony on the trial disclosed: that the barn referred to is wholly on lot (1), but there was testimony tending to show that a temporary shed, which was attached thereto at the time of the sale, extended slightly over the line upon the lot in dispute. The dwelling house and liquor store, which, it is claimed by the defendants, were erected and used as one building, stand partly on lot (3) and partly on the lot in controversy.

The defendants gave other evidence, tending to show that the three lots were used as one property. They also offered to show that the lot marked on the draft as lot (2) was not owned

by the defendant in the execution and was not bound by the lien of the judgment on which the sale was made.

*Errors assigned* were :

(1) In rejecting the following offer of defendants :

(Thomas Miner on stand.)

By Mr. DeWitt: The counsel for the defendants propose to show by the witness on the stand that after he purchased the property and took the possession of it he sold the property, including the dwelling house and the liquor store, to John Miner's wife, with John Miner's knowledge and consent, and that John Miner paid him $90.00 upon the contract; that Mrs. Miner failed to pay anything further, and then he brought an action to recover the possession, and that this action to recover the possession after the witness upon the stand had the possession of it was the action that he has already referred to in his testimony.

(2) In rejecting the following offer of defendants.

(Thomas Miner on stand.)

By Mr. DeWitt: The counsel for the defendants propose to show by the witness on the stand the time when the dwelling house upon the property that he purchased at sheriff's sale under the Adriance Platt writ was built, for the purpose of identifying the same as the dwelling house mentioned in the description in the fi. fa. upon which the property was sold to the defendant in this case ; also propose to show by the witness on the stand that the dwelling house was built by John Miner. This for the purpose of identifying it as the dwelling house and liquor store upon the premises described in the Adriance Platt writ; this for the purpose of identifying and locating the property purchased by the defendant at the sheriff's sale on the Adriance Platt writ already in evidence.

By Mr. Cronin: The counsel for the plaintiff object to the offer as irrelevant, immaterial and incompetent in this case, and the house spoken of is not on the lot in controversy.

By Mr. DeWitt: We add to the offer that we propose to show by the witness on the stand that the dwelling house mentioned in the Adriance Platt writ and the liquor store mentioned in the same writ are upon one foundation, covering one cellar and under one and the same roof,—that the two constitute but one building.

By Mr. Cronin : The counsel for the plaintiff renew their objection to the offer as irrelevant and immaterial.

By the Court : We have already allowed evidence by this witness and others what buildings there are upon the premises, and the question as to when these buildings were built or who these buildings were built by, we are unable to see can throw any light upon the question of location, therefore we reject the offer.

(3) In rejecting the following offer of the defendants.

(Thomas Miner on stand.)

Mr. DeWitt : The counsel for the defendants offer to show by the witness on the stand that at the sale upon the Adriance Platt writ before the bidding the sheriff offered for sale the real estate of the defendant, John Miner, situated in the borough of Dushore, upon which there were improvements as follows :

A dwelling house, a liquor store, a frame barn, with fruit trees thereon ; that he read this aloud to the bidders and that the defendant, John Miner, was present at the sale.

Mr. Cronin : The counsel for the plaintiff object to the offer as irrelevant, immaterial and incompetent ; that the sheriff's levy gives the description and cannot be shown by the witness on the stand.

By the Court : The defendant has been permitted to give in evidence his levy, the description contained in the levy, the improvements mentioned in the levy ; and what took place at the sale couldn't in any way affect the levy or identify what was levied upon, and that the only thing that could be sold at the sale was what was levied upon by the sheriff ; we therefore reject this offer.

(4) In rejecting the following offer of defendants.

(A. Walsh on stand.)

By Mr. DeWitt : The counsel for the defendant propose to show by the witness on the stand that at the time John Miner's real estate, situated in the borough of Dushore, was sold upon the Adriance Platt writ to Thomas Miner, the defendant in this case, that he was at that time well acquainted in the borough of Dushore, and with the land in question, that he heard the description read by the sheriff at the sale prior to the bidding, that he bid at said sale after hearing the description read

upon the lot belonging to John Miner, with the frame dwelling house, liquor store and frame barn thereon ; that in fact the property offered by the sheriff at that time and sold by him was the lot with the liquor store upon it, the frame dwelling house upon it and the frame barn with the fruit trees upon it.

(5) In rejecting the following offer of defendant.

(John Utz on the stand.)

By Mr. DeWitt: The counsel for the defendants offer to show by the witness on the stand, who was the sheriff of Sullivan county and made the sale of land of John Miner to Thomas Miner upon fi. fa. No. 29, September term, 1890, that he made the levy himself in the borough of Dushore ; that he levied upon the lot or lots having thereon a dwelling house and liquor store and frame barn and fruit trees.

By Mr. Cronin: The counsel for the plaintiff object to that offer as irrelevant, immaterial and incompetent; the record says what the levy was.

By the Court : We would allow him to locate anything upon the ground, any description of any lot about which there was any ambiguity as to the questions of location, but upon this the levy itself shows what was levied upon. We will allow you to locate upon the ground the lots described in the levy or locate it by parol testimony, but we reject the offer.

(6) In rejecting the following offer of defendants.

(John Utz on stand.)

By Mr. DeWitt: The counsel for the defendants propose to show by the witness on the stand that he was the sheriff of Sullivan county, made the levy upon fi. fa. No. 29, September term, 1890, being the Adriance Platt & Co. writ, and that he levied upon the lot on German street in Dushore borough that had the liquor store upon it.

By Mr. Cronin: The counsel for the plaintiff object to the offer as irrelevant, immaterial and incompetent. We further object that the offer does not specify which lot of John Miner sold under the Adriance Platt writ the liquor store is situated upon, and which lot the dwelling house is situated upon.

By the Court: The levy shows for itself what was levied upon, and we therefore sustain the objection.

(7) In rejecting the following offer of defendants.

(John Utz on stand.)

By Mr. DeWitt: The counsel for the defendants offer to show by the witness on the stand who was the sheriff of Sullivan county and made the sale upon the Adriance Platt & Co. writ against John Miner, No. 29, September term, 1890, upon which the real estate of John Miner was sold to Thomas Miner, the defendant in this case ; that he offered for sale and sold at that time the lot in Dushore borough having the liquor store thereon.

By Mr. Cronin: The counsel for the plaintiff object to the offer as immaterial, irrevelant and incompetent, and that the offer does not state what lot the liquor store is situated upon.

By the Court: The objection is sustained.

(8) In rejecting the following testimony offered on the part of the defendant.

(Thomas Miner on stand.)

Q. Mr. Miner, state whether John Miner, the defendant in the execution, was present at the sheriff sale upon the Adriance Platt & Company writ at the time you purchased the property.

By Mr. Cronin : The counsel for the plaintiff object to the question as immaterial.

By the Court: What is the purpose of the question?

By Mr. DeWitt: To show that the defendant was present at the sale.

By the Court: The objection is sustained.

(9) In rejecting the following offer of defendant.

By Mr. Scouten : The counsel for defendant offer in evidence deed dated November 4, 1879, John Miner and wife to James McMahan, for the purpose of showing that the McMahan lot described by plaintiff's witness, Persun, was sold by John Miner and conveyed to McMahan in 1879, which was prior to the entry of the Adriance Platt & Company judgment, to show that John Miner at the time of the sale on the Adriance Platt & Company writ had no title nor any interest to the McMahan lot : To be followed by evidence that he acquired no title or interest in the lot subsequent to this date, and that he was not the owner of the lot at the time of the sale to the defendant, Thomas Miner, nor was he the owner of the lot at the time the Adriance Platt & Company judgment was entered of record.

By Mr. Cronin: The counsel for the plaintiff object to the offer as irrelevant and immaterial and incompetent.

By the Court: The objection is sustained and offer rejected.

(10) In rejecting the following offer of defendants.

By Mr. DeWitt: The counsel for the defendants offer this deed described in the last offer in evidence for the purpose of showing that John Miner had no interest or title in the Mc-Mahan lot, being lot No. 2, on the Persun map, and further offer to show that the Adriance Platt & Company judgment was not entered until after John Miner had disposed of the McMahan lot so that the purchaser at the sale, to wit, the defendant, Thomas Miner, got no title whatever to the McMahan lot by reason of such sale.

(11) The court erred in that part of its charge to the jury in this case which reads as follows, viz: " The levy in the case, gentlemen, is a levy upon three distinct tracts of land."

(12) The court erred in that part of its charge to the jury in this case which reads as follows, viz: " The fact that it is away from where the other lots are; the fact that there are no improvements upon it, is a matter of no consequence, if the adjoiners and the metes and bounds are such as that you can satisfactorily and properly locate it by these."

(13) The court erred in that part of its charge to the jury in this case which reads as follows, viz: " If, when you come to locate them, you find that the courses and distances and the calls for adjoiners will not correspond with the improvements that are mentioned upon the levy then you will give weight to the courses and distances and the calls for adjoiners and disregard the calls for improvements which are mere descriptions for the purpose of informing bidders, and if they are not upon the land as described by metes and bounds, then you must consider the description as by metes and bounds and the calls for adjoiners and the calls of improvements must be disregarded."

(14) The court erred in its qualification of the defendant's first point which was as follows:

*Point:* The law requires the sheriff to give notice of what lands or tenements are to be sold by him, but does not dictate in any way whatever the manner in which they shall be described. *Answer:* That point we affirm with the qualification that it requires the sheriff to give such description as will enable anybody to locate it independently.

(15) The court erred in its qualification of defendant's second point which was as follows:

*Point:* That if the jury find that the lot having the liquor store upon it was advertised by the sheriff and sold upon the Adriance Platt & Co. writ and that the same was bid off by Thomas Miner, their verdict must be for the defendant. *Answer:* We affirm that point, if you find that the courses and distances and calls for adjoiners cover the land in controversy. If there is a mere call for a liquor store, and you find that the liquor store was not upon the lot as described by courses and distances and adjoiners, then we say to you that you must regard the calls for adjoiners and courses and distances, and disregard the calls for improvements.

(16) The court erred in its answer to plaintiff's first point. The point and answer were as follows:

*Point:* There being no dispute concerning the facts of this case, nor any conflict of testimony as to the marks upon the ground, the calls for adjoiners and courses and distances of the said lots, the location of the lot claimed by the plaintiff is a question to be determined by the court. There is no question of fact to be submitted to the jury, therefore we ask the court to instruct the jury that their verdict must be for the plaintiff. *Answer:* That we do not affirm, because we leave to you the credibility of the witnesses, whether they properly located the land upon the ground, and know what they are testifying to. We say to you that you are to consider the means that they have of knowing what they are testifying to, and their knowledge upon the subject, and their credibility, and that is entirely for you. If you find that the land in controversy is covered by the plaintiff's deed, and the description is not covered by the defendant's, then you will find for the plaintiff. If you find that it is covered by the defendant's, then you will find for the defendant.

(17) In answer to plaintiff's second point. The point and answer were as follows:

*Point:* The jury should locate the land of Thomas Miner bought at John Miner's sale on the Adriance Platt writ by the monuments, adjoiners, courses and distances described in the writ, and not by the improvements on other lands of John Miner, which are not described by monuments, adjoiners,

courses and distances in the writ. *Answer:* We affirm this, with this qualification, that you are to say whether those improvements mentioned in the writ are upon the land as described by courses and distances or not. If they are not upon it, then you should disregard, as I said before, the calls for monuments.

(18) In answer to plaintiff's fourth point. The point and answer were as follows:

*Point:* Even if the jury believe that the sheriff in the sale to Thomas Miner on the Adriance Platt writ described improvements, viz: A portion of the liquor store and a part of the shed on other lands of John Miner, which were not upon the land described by adjoiners, courses and distances in said writ, such description of improvement would not convey the land outside of that described by adjoiners, courses and distances found on the ground. *Answer:* That point we affirm, if you find that there was any portion of the store or of the barn that is off from the land as described by courses and distances, you will be governed by the courses and distances.

(19) In answer to plaintiff's fifth point. The point and answer were as follows:

*Point:* The fact that a part of the liquor store described by the sheriff as a part of the improvements, in the sale of Thomas Miner on the Adriance Platt writ, was located on other lands of John Miner, not described in said Platt writ, would not convey the title to the other lands of John Miner to Thomas Miner. *Answer:* That we affirm, provided you find it as a fact that it was as there stated, on other lands.

(20) In answer to plaintiff's sixth point. The point and answer were as follows:

*Point:* The fact that part of the liquor store described as part of the improvements, on the lots sold to Thomas Miner, is now found to be upon a lot afterwards sold to John W. Carroll, the plaintiff, would not give title to Thomas Miner in the lot bought by J. W. Carroll. *Answer:* That we affirm, if you find a part of it is upon the land sold to Carroll, and not upon the land that was sold and covered by the description by courses and distances and adjoiners in the deed under the Adriance Platt writ.

(21) In its answer to plaintiff's seventh point. The point and answer were as follows:

*Point:* If the jury believe that the three lots bought by

**450**        CARROLL *v.* MINER et al., Appellants.

Arguments—Opinion of the Court.        [1 Super. Ct.

Thomas Miner and the lot bought by J. W. Carroll can be located on the ground by their calls for adjoiners, and courses and distances, without interfering with each other, the fact that a portion of the liquor store extends over on the Carroll lot will not give title to Miner in the Carroll lot, and the verdict should be for the plaintiff.

*Answer:* That is true, if you find the facts to be as there stated.

*J. G. Scouten* and *Clinton De Witt,* for appellants.

*John H. Cronin* and *E. J. Mullen,* for appellee.

OPINION BY RICE, P. J., April 13, 1896:

In that portion of his charge which is the subject of the eleventh assignment of error, the learned judge below instructed the jury that the levy was upon three distinct tracts, and the case was tried upon that theory. The contention of the defendant is, that the levy, taken as a whole, and construed in the light of the extrinsic evidence as to the location and use of the buildings, was a levy upon the three contiguous lots, which, together, constituted but one property. Was there sufficient evidence to warrant the submission of this question to the jury? The limitations in a conveyance are always matters of law. What lands are described, is often a matter of fact. The operation of the deed as to the nature of the estate is for judicial construction ; the description of the property, its extent, often is a mixed question of law and fact: Swartz v. Moore, 5 S. & R. 257. It is undoubtedly true that where the subject-matter of a grant is insufficiently described in a deed, parol evidence may be given to show precisely what was intended to be conveyed. It is said in Starkie on Evidence, 602, that in general, when there is any doubt as to the extent of the subject-matter devised by will, or demised or sold, it is a matter of extrinsic evidence to show what is included under the description as parcel of it. The same principle is ruled in Scott v. Sheakly, 3 W. 50, and Hoffman v. Danner, 14 Pa. 25. And in such case it is well decided that the question of the extent of the grant must go to the jury. . . . The authorities are equally clear that the rule which allows extrinsic evidence to

explain the extent of the subject sold, has no application where a subject-matter exists which satisfies the terms of the instrument of conveyance : Starkie on Evidence, 693 ; Chechester v. Oxender, 3 Taunt. 147." Vandegrift v. Harvey, 89 Pa. 346. If the description applies with substantial accuracy to only one person or thing, evidence to show that the description was intended to apply to some other will not be admitted. 1 Gr. Ev. 290, note *a* (15th ed.). This latter principle would rule the question if the description of lot (2) stood by itself and there were nothing else in the levy to explain or qualify it. Thus looking at the case we would be compelled to say that it is precisely descriptive of a lot lying apart from lots (1) and (3), and has no elements which are descriptive of the lot in controversy ; and we all agree that the rule which permits the false parts of a description to be rejected, does not permit the court or a jury to reform a precisely descriptive and unambiguous levy and sheriff's deed, by substituting one tract for another, upon extrinsic evidence that the sheriff intended to levy upon and sell the former, but, by mistake, described the latter. But, to determine what was embraced in a levy, all of its parts should be considered, and, if being so considered, there appears to be ambiguity, then the rule applies which permits the erroneous parts of the description to be rejected, if sufficient elements are left to identify the subject of sale. Looking at this levy as a whole we find that : First, the levy calls for three lots having certain buildings upon them. If, as the plaintiff contends, the courses and distances are to control in the location of lots (1) and (3), then these buildings are on the three contiguous lots, and none of the buildings is on any part of the lot marked on the draft as No. 2. It is argued that the mention of the buildings has no significance, because it was merely for the information of bidders. If they had simply been mentioned in the advertisement and not in the levy, there would be some force in this suggestion ; but being mentioned in the way they are in the levy, they help, and undoubtedly were intended, to identify the lots levied on.

Second. The defendant in the execution owned the three contiguous lots ; he did not own the lot marked on the draft as No. 2, nor was that lot bound by the lien of the judgment on which the sale was made—at least so the defendant offered to

prove.   This fact would not by any means be conclusive, but it would be a circumstance proper for the jury's consideration, and would add probability to the defendant's contention.

Where doubtful expressions are used, the construction should be favorable to the plaintiff to enable him to obtain payment of his debt from the property of his debtor, rather than that he should lose it: Inman v. Kutz, 10 W. 90 ; Heartley v. Beaum, 2 Pa. 165, 172 ;  Wright v. Chestnut Hill Iron Co., 45 Pa., 475.

Third.  The three contiguous lots were not treated by the owner as distinct and separate divisions of his land, but were occupied and used as one property ; or rather, to be more exact, there was evidence from which a jury would be warranted in finding this as a fact.  The presumption arising from the sheriff's duty to levy on and sell it as one property, and not to divide it in a manner so injurious to the plaintiff and the defendant in the execution is very strong, as the cases cited later abundantly show.   This presumption is strengthened by the fact shown by the return that the whole property was sold in one lot for a gross sum.

Taking the description as a whole there is a seeming contradiction when we come to apply it to the land; the question then arises whether the levy was upon three distinct and separate lots, or upon the three contiguous lots upon which the buildings stand, and which were owned by John Miner and used as one property.  It seems to us after a very careful examination of the cases, that this question should have been submitted to the jury : Swartz v. Moore, 5 S. & R. 256 ; Scott v. Sheakly, 3 W. 50 ; Hoffman v. Danner, 14 Pa. 29 ; Shoemaker v. Ballard, 15 Pa. 92 ; Hetherington v. Clarke, 30 Pa. 393 ; Susq. Boom Co. v. Finney, 58 Pa. 200–208 ; Lodge v. Barnett, 46 Pa. 477 ; Titusville Novelty Iron Works' Appeal, 77 Pa. 103 ; Steigleder v. Marshall, 159 Pa. 77 ; Wildasin v. Bare, 171 Pa. 387.

But, assuming that the levy is to be construed as a levy on three distinct tracts not contiguous, or that a jury upon the question being submitted to them would so find, does it follow that the boundaries of lots (1) and (3) are to be ascertained solely by the courses and distances and calls for adjoiners, without reference to the buildings and other natural objects called for in the levy as being on them ?   Take lot (3).   There

is no dispute as to the location and course of the front and rear lines, or as to the location, course and length of the northern side line. It is conceded that they are correctly described in the levy, and the call for buildings is entirely consistent with the calls by which these lines are located. Therefore, there is no room for doubt as to the identity of the lot intended to be levied on, as there may be in the case of lot (2). But, if the courses and distances are to control in the location of the southern side line of the lot, it would divide the building and leave one half or two thirds of the part used as a liquor store upon the lot in controversy. Adhering strictly to the theory upon which the case was submitted to the jury, the levy included land which the defendant in the execution had conveyed away before the lien of the judgment attached, and excluded a part of the very land upon which the buildings stood, and which undeniably belonged to him. Such a levy would be contrary to the provisions of the act of June 16, 1836 (P. L. 769) and whilst it is not contended that the title of a purchaser after acknowledgment and delivery of the deed would be invalidated by the sheriff's disregard of the statutory provision, (see Carpenter v. Cameron, 7 W. 51; McCormick v. Harvey, 9 W. 482,) yet any investigation of what was embraced in the levy ought to be entered upon with the prima facie presumption that the sheriff intended to obey the law: Lodge v. Barnett, 46 Pa. 477; Buchholder v. Sigler, 7 W. & S. 154; Wildasin v. Bare, 171 Pa. 387. In Wright v. Chestnut Hill Iron Co., 45 Pa. 475, Justice THOMPSON said: "For it is the requirement of the law, that if any part of an entire establishment, such as a mill or foundry, or a furnace establishment be seized in execution, the whole must be sold. If the descriptive parts of the levy omit anything which is parcel of the whole we must look to the entire levy to see what was intended to be seized." The same principle is applicable in a levy and sale of a dwelling house or a store. The sheriff has no greater warrant of law in such a case than in the case cited to divide the building by an arbitrary line running through it, so that to give possession of the land sold would result in the destruction of that which, perhaps, gave it its chief value. It is a familiar principle that where the description in a deed is true in part, but not true in every particular, so much of it as is false is

rejected and the instrument will take effect if a sufficient description remains to ascertain its application: 1 Gr. Ev. sec. 301. What is most material and most certain in a description shall prevail over that which is less material and less certain: Wright v. Iron Co., supra. The object in cases of this kind is to ascertain the intent of the parties, and the rule to find the intent is to give most effect to those things about which men are least liable to mistake. Hence regard is paid to monuments, natural or artificial. Mistakes may be made in quantity, in the course and length of lines, and even in the location of deed lines of adjoiners not marked on the ground; but a building such as is described here is a thing about which there can be no mistake. There could be no more certain evidence of the scope of the levy if the intent of the parties concerned is to be considered. These rules for ascertaining the intent apply to official as well as private conveyances. "In the case of descriptive errors, where no one is shown to be injured thereby, the rules of construction applicable to deeds inter partes apply also to sheriff's sales:" Middleton v. Middleton, 106 Pa. 252, citing White v. Luning, 93 U. S. 514; 23 L. Ed. 938. In the case at bar the plaintiff had actual notice of the defendant's title under the first sheriff's sale, and therefore stands in place of the defendant in the execution.

The defendant gave some evidence, tending to show, and offered explicitly to show, that the dwelling house and liquor store mentioned in the levy are upon one foundation, cover one cellar, and are under one and the same roof, and that the two constitute but one building. We think the evidence embraced in this offer should have been admitted. Assuming the facts to be as claimed, and presuming, as we may, that the sheriff intended to do his duty, what more certain evidence could there be of the intent of the sheriff to levy on and sell all the land actually covered by that building? And what more certain evidence could there be of the understanding of the parties to the writ and of bidders? What is to prevent this common intent and understanding from being carried out? In his answer to the plaintiff's fourth point the learned judge said: "If you find that there was any portion of the store or of the barn that is off from the land as described by courses and distances, you will be governed by the courses and dis-

tances." Practically that instruction amounted to this, that in locating lot (3) the jury must stop at a point 33¼ ft. from the corner of John Miner, Sr.'s lot, and that if a line projected from that point would cut directly through the liquor store it would make no difference. The same idea was conveyed in other portions of the charge. We think this was error. The courses and distances in a deed always give way to the boundaries found on the ground or supplied by proof of their former existence when the marks or monuments are gone: Lodge v. Barnett, 46 Pa. 417; Morse v. Rollins, 121 Pa. 537. Even calls for adjoining tracts sometimes give way to monuments and marks upon the ground. A marked line is a very common monument, and when well established will prevail over a call for an adjoiner. A large number of cases will be found collected in Craft v. Yeaney, 66 Pa. 210, and Burkholder v. Markley, 98 Pa. 37, and in a valuable note to Dogan v. Skeeright, 4 Sharswood's and Budd's L. C. of Real Prop. 359. What is true of such a monument is true of any other agreed upon by the parties, called for in the deed, and equally well established. The cases show that a monument may be any object, natural or artificial, set up or adopted by the parties to identify the subject of the grant, or to define its boundaries. Usually, but not always (as is shown in the class of cases to which Burkholder v. Markley belongs), it is referred to in the deed or other instrument, and in such a way as to indicate its purpose; and whether referred to as a boundary, or as a point from which the boundary is to be ascertained, or as on the land or as included within its boundaries, it is evidence of very high value of the intent, which is always the thing sought to be ascertained. What then is there in the call for adjoiners which is of higher value, or which more certainly points to the intent? The language of the levy as to the line we are now considering is "thence by lands of formerly C. Cronin." The lot in controversy formerly belonged to C. Cronin, and, in the absence of anything to qualify it, the language used would imply that the northerly side line was the line called for: Koch v. Dunkel, 90 Pa. 264, 268. This would result, not from an unbending and unvarying rule of law, but from a rule of construction which must yield to the actual intent where it

clearly appears.  Before rejecting any part of a description the effort should be to harmonize the different parts.

The description of this line would be literally accurate even if it be held that it should be so run as to include all the land actually covered by the building.  But we are not disposed to rule the question on what may seem to be a quibble as to the meaning of the language of the call.  Let us suppose that the northerly side line of the Cronin lot was called for.  It was not marked or indicated in any way on the ground.  The owner of the land disregarded it in building.  It was not a division of his property which he had made or recognized.  It was not the line of the lot upon which the building stood.  To what then is the discrepancy between the two elements in the description to be attributed; to the sheriff's mistake as to the actual location of the line of what was formerly the Cronin lot, or to an intention to disregard his duty to the injury of the defendant? "If therefore we find that he (the sheriff) had followed the owner's interests in the main and substantial parts of his description, but had deviated in a minor particular only, we are to attribute that to a mistake rather than to an intention to injure, if the evidence applying the description to the ground leads to that conclusion.  It is well settled that you may not change or alter the levy by parol evidence, but you may show in its application to the subject-matter it is incorrect; and if without the erroneous part of the description it has sufficient elements left to identify the subject of sale, it is sufficient:" Lodge v. Barnett, 46 Pa. 477.  Unless we are obliged to reject the reference to the building, and are required to say that it was not intended to identify and describe the lot; nothing can be clearer than that his intent was to levy on and sell all the land upon which the building actually stands.  Whether more than that would pass as appurtenant to it, is another question.  But it cannot be held that less than that would pass, without holding that the sheriff proceeded in reckless disregard of his sworn duty and of the rights of the defendant in the execution.  Not only the prima facie legal presumption that he intended to obey the law, but the inference fairly to be drawn from the levy taken as a whole, forbids such a conclusion.  The calls of lots (1) and (3) may show an intent to exclude from the levy the land lying

between the buildings, but are not so definite, unequivocal, and conclusive as to require this one line to be so run as to exclude part of the very land upon which the dwelling house and liquor store stand.  A question of location or the application of a grant to its proper subject-matter is a question of fact to be determined by the jury by the aid of extrinsic evidence.  Steigleder v. Marshall, 159 Pa. 77.  Especially is this true in the case of a sheriff's levy.  " The question is, what limits the officer had in his eye at the time of the levy, and what proportion of the land he actually levied upon: " Hoffman v. Danner, 14 Pa. 25.  Under the testimony in this case this question was partly one of fact, and was for the jury.  It was submitted to the jury, but with instructions which deprived them of the benefit of very important evidence in determining it.  Under the circumstances of this case the building is to be treated as a monument, and, therefore, as part of the description of the lot upon which it stands.  In locating the only line of that lot which is really in dispute it is very high evidence of the scope and intent of the levy.  There was evidence from which the jury would have been warranted in locating that line so as to include at least, all of the land upon which the building actually stands.  They should have been permitted to do so, although it might give the lot a greater width than the courses and distances mentioned in the description, or might carry it beyond the original line of the Cronin lot.  We have not separately discussed the question as to the location of the lot, (1), because it is not clear that any portion of the barn is on the lot in dispute.  For the reason stated we are of opinion that the court tried the case upon a wrong theory as to the buildings as evidence of the extent of the levy, and that the instructions embraced in the 11th, 15th, 17th, 18th, 20th and 21st assignments of error were erroneous.

We are of opinion also that the evidence covered by the 2d and 9th assignments of error was competent, for the reason stated in our discussion of the main question.

We are not convinced that the facts offered to be proved by the sheriff and Thomas Miner regarding the sale would add anything explanatory to what the return itself shows ; therefore, the court committed no error in rejecting the offers.  Much less was it competent to explain the levy by testimony of a

bidder as to his understanding. Sergeant v. Ford, 2 W. & S. 122–126. McClenahan v. Humes, 25 Pa. 85–87. The 3d, 4th, 5th, 6th, 7th and 8th assignments of error are overruled.

We see no relevancy in the evidence which is covered by the first assignment; it would have tended only to confuse, and was properly rejected.

Judgment reversed and venire facias de novo awarded.